## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 37296

| | | |
|---|---|---|
| **TREVOR JAMES BOOTH,** | ) ) ) ) | **Boise, June 2011 Term** |
| Petitioner-Respondent, | ) ) | **2011 Opinion No. 87** |
| v. | ) ) | **Filed: July 28, 2011** |
| **STATE OF IDAHO,** | ) ) | **Stephen W. Kenyon, Clerk** |
| Respondent-Appellant. | ) ) ) ) ) | **SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED JUNE 29, 2011 IS HEREBY WITHDRAWN** |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. The Honorable Gregory Culet, District Judge.

The district court's order, granting post-conviction relief, is <u>affirmed</u>.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Law Offices of Van G. Bishop, Nampa, for respondent. Van G. Bishop argued.

_____

J. JONES, Justice.

The State of Idaho appeals the district court's order granting Trevor Booth's petition for post-conviction relief on the ground that Booth received ineffective assistance of counsel. We affirm.

### I.
### Factual and Procedural Background

On January 16, 2005, Leonard Kellum died as a result of multiple gunshot wounds that he sustained at his residence. After an investigation, law enforcement suspected that Trevor Booth was responsible for the shooting. Law enforcement based this conclusion on several pieces of

1

evidence obtained during the investigation. First, law enforcement determined that the perpetrator had entered Kellum's residence through the back door and shot him five times using an improvised silencer made out of a plastic soda bottle. Law enforcement found a single set of footprints leading from the back door of Kellum's residence to the street, where neighbors said a black pickup truck was parked at the time of the shooting. Booth, who owned a black pickup truck, told law enforcement that he had driven to Kellum's residence on the morning Kellum was shot to pick up marijuana that he planned to sell. Booth claimed he parked his pickup truck on the street and approached the front door of the residence where he heard screaming and gunshots. Booth told law enforcement that he left the residence after hearing the shots. However, before Kellum passed away, he was transported to the hospital where he identified Booth as the person who had shot him.

Booth was subsequently charged with first-degree murder, and was represented by Richard Harris. Although the crime of first-degree murder carries a potential penalty of death,[1] the State declined to file a notice of intent to seek the death penalty, thereby establishing that Booth's case was a non-capital case.[2] During the time the case was pending, Harris met with Booth periodically to discuss Booth's version of the events leading up to Kellum's death. Although Booth initially maintained that he did not commit the offense, he eventually acknowledged that he killed Kellum, but asserted he did so in order to defend himself and his family. Booth told Harris that he was actively involved in selling controlled substances and Kellum was his supplier. Booth explained that he eventually fell behind in paying Kellum for the drugs he had supplied, and Kellum began making threats of physical violence towards Booth, his family, and his girlfriend if he did not pay the money owed.

Prior to trial, Gearld Wolff, the prosecutor handling Booth's case, informed Harris that he intended to file a motion requesting that the Court provide a special verdict form to be used by the jury if Booth was convicted of first-degree murder. Specifically, the proposed verdict form would instruct the jury to determine whether certain statutory aggravating circumstances delineated in I.C.

---

[1] According to I.C. § 19-2515(1),

> Except as provided in section 19-2515A, Idaho Code, a person convicted of murder in the first degree shall be liable for the imposition of the penalty of death if such person killed, intended a killing, or acted with reckless indifference to human life, irrespective of whether such person directly committed the acts that caused death.

All statutory citations in this opinion will refer to those in effect at the time that Booth's criminal case was pending.

[2] Pursuant to I.C. § 19-2515(3)(a), a defendant convicted of a crime that is punishable by death cannot be sentenced to death unless the State files a notice of intent to seek the death penalty.

2

§ 19-2515(9)[3] existed, including whether (1) the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity; (2) by the murder, or circumstances surrounding its commission, the defendant exhibited utter disregard for human life; or (3) the defendant, by prior conduct or conduct in the commission of the murder at hand, has exhibited a propensity to commit murder which will probably constitute a continuing threat to society. Wolff communicated to Harris his understanding that pursuant to I.C. § 18-4004, the statute dealing with the penalties for first-degree murder, the State could seek an instruction regarding statutory aggravating circumstances even in a non-capital case. I.C. § 18-4004[4] provides,

> Subject to the provisions of sections 19-2515 and 19-2515A, Idaho Code, every person guilty of murder of the first degree shall be punished by death or by imprisonment for life, provided that a sentence of death shall not be imposed unless the prosecuting attorney filed written notice of intent to seek the death penalty as required under the provisions of section 18-4004A, Idaho Code, and provided further that whenever the death penalty is not imposed the court shall impose a sentence. If a jury, or the court if a jury is waived, finds a statutory aggravating circumstance beyond a reasonable doubt but finds that the imposition of the death penalty would be unjust, the court shall impose a fixed life sentence. If a jury, or the court if a jury is waived, does not find a statutory aggravating circumstance beyond a reasonable doubt or if the death penalty is not sought, the court shall impose a life sentence with a minimum period of confinement of not less than ten (10) years during which period of confinement the offender shall not be eligible for parole or discharge or credit or reduction of sentence for good conduct, except for meritorious service. Every person guilty of murder of the second degree is punishable by imprisonment not less than ten (10) years and the imprisonment may extend to life.

Wolff interpreted this statute to mean that if the jury were to find any statutory aggravating circumstances in a non-capital case, the court would then be required to impose a fixed life sentence.

After examining the statute, Harris agreed with Wolff's interpretation and believed Booth would be subject to a fixed life sentence if the jury were to find, beyond a reasonable doubt, that a statutory aggravating circumstance existed. Harris and Wolff subsequently met with the district

---

[3]I.C. § 19-2515(9) sets forth the list of statutory aggravating circumstances, one of which must be found to exist beyond a reasonable doubt, before a sentence of death can be imposed.

[4] I.C. §§ 18-4004 and 19-2515 were amended in 2003 to reflect the requirement established by the United States Supreme Court in *Ring v. Arizona*, 536 U.S. 584 (2002), that a jury, rather than a judge, find the necessary statutory aggravating circumstances in a death penalty case. *See* 2003 Idaho Sess. Laws ch. 19, Res. 12510 Statement of Purpose.

court judge prior to the scheduled pretrial conference to discuss the State's intent to request the special verdict form. During this meeting, the parties discussed Wolff and Harris's mutual understanding of I.C. § 18-4004. The judge informed Wolff and Harris that the court would likely use the special verdict form if it was requested by the State and supported by the evidence.

Thereafter, Harris prepared a memorandum to Booth outlining his understanding of the potential penalties if Booth were to be convicted by a jury of first-degree murder. In the memorandum, Harris set forth the text of I.C. § 18-4004 and explained that,

> What this statute means is that upon a conviction for first degree murder, if the jury or judge if [a] jury is waived, finds a statutory aggravating circumstance beyond a reasonable doubt[,] the sentence is death. However, if the prosecutor does not seek death, as is the case here, and if a statutory aggravating circumstance is found, then the sentence is a fixed life sentence. That means the person sentenced will spend his life in prison and will die there. At the pre-trial conference on Friday the Judge indicated to the prosecutor and myself that he will submit a verdict form to the jury that will ask the question of the jury: "Did Trevor Booth commit the crime of first degree murder? Yes or No." The verdict form will also contain the same question for second degree murder and for manslaughter. If the jury finds you guilty of first degree murder, the verdict form will contain the further question for the jury: "do you find beyond a reasonable doubt a statutory aggravating circumstance? Yes or No." Since the trial judge intends to submit the question to the jury as part of the verdict form and if the jury finds a statutory aggravating circumstance as part of the verdict, then the sentence to be imposed by the judge, notwithstanding all the evidence there is in mitigation, [is] a fixed life sentence which means you will spend the rest of your life in prison.

The memorandum goes on to explain what statutory aggravating circumstances the State intended to prove. Harris mentioned that in his experience, "it is not too difficult for a finding to be made that a murder is heinous (a murder by definition is considered heinous) atrocious or cruel or alternatively that by committing the murder, the defendant showed utter disregard for life." Harris also described, in detail, all of the State's evidence against Booth, and explained "based upon the evidence as currently presented, I believe the high probability is that the jury is going to return a verdict of guilty." Finally, Harris advised Booth that his best option was to consider entering into a plea agreement with the State.

> The bottom line is this. If you go to jury trial, there is the very strong probability of facing a fixed life sentence. That means spending the rest of your life in prison. If you enter a plea to murder with the prosecutor waiving aggravated circumstances, or not requesting the court consider aggravated circumstances, then you would face a minimum period of incarceration of ten years or whatever greater period the judge[] might impose. I have indicated above I do not think the Judge would

4

impose a term greater tha[n] fifteen years followed by an indeterminate life. Life in that context means thirty years. My recommendation is because of the strong risk of spending the rest of your life in prison, a plea agreement may be your best option.

After giving the memorandum to Booth, Harris met with Booth's family members to explain and discuss the memorandum. Harris discussed with Booth's family the nuances of the statutory aggravating circumstances and the risks associated with taking the case to trial. During this time, Harris continued to negotiate with Wolff regarding a potential plea agreement.

Booth subsequently entered into a Rule 11 plea agreement with the State. Pursuant to the plea agreement, Booth agreed to plead guilty to first-degree murder in exchange for the State's agreement not to pursue statutory aggravating circumstances as part of sentencing. The Rule 11 agreement was filed with the court on June 9, 2005, and Booth entered a plea of guilty on the same day. After holding a sentencing hearing, the district court sentenced Booth to an indeterminate life sentence with thirty years fixed.

After a failed appeal challenging his sentence,[5] Booth timely filed a petition for post-conviction relief. The court dismissed all of Booth's allegations in support of his petition upon the State's motion for summary dismissal, except for his allegations that (1) Harris used coercive and threatening tactics to get him to plead guilty by assuring him and his family that he would receive a ten year fixed sentence if he pleaded guilty and a fixed life sentence if he took the case to trial; and (2) Harris used the sentencing memorandum to coerce him into pleading guilty and was not adequately prepared to go to trial even though Booth felt he "had nothing to loose [sic] by going to trial."

After an evidentiary hearing on the matter, the district court concluded that Harris' representation of Booth fell below an objective standard of reasonableness because Harris erroneously advised Booth that he would be subject to a mandatory fixed life sentence if he went to trial and the State's special verdict form was presented to the jury. According to the district court, I.C. § 18-4004 clearly indicates that if Booth's case had gone to trial, and the jury had found an aggravating circumstance, such a finding would "merely have been advisory in nature and the court would not have been mandated to sentence Booth to a fixed life term, but would actually have been bound only to sentence within the parameters of a life sentence, with any fixed portion

---

[5] Booth appealed his sentence to the Court of Appeals, where his sentence was affirmed.

5

above ten years . . . ." The court also determined that there was a reasonable probability that but for Harris' erroneous interpretation of the statute, Booth would not have pleaded guilty and would have proceeded to trial. Therefore, the district court granted Booth's petition for post-conviction relief and ordered his guilty plea to be withdrawn and the case set for jury trial. The State timely appealed to this Court.

## II.
## Issue on Appeal

I.        Whether the district court erred in granting Booth's petition for post-conviction relief on the ground that he received ineffective assistance of counsel.

## III.
## Discussion

### A.      Standard of Review

When reviewing a district court's decision to grant or deny a petition for post-conviction relief following an evidentiary hearing, this Court will not disturb the district court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *State v. Murray*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Murray*, 121 Idaho at 921, 828 P.2d at 1326; *Strickland v. Washington*, 466 U.S. 668, 698 (1984). When faced with a mixed question of fact and law, the Court will defer to the district court's factual findings if supported by substantial evidence, but will exercise free review over the application of the relevant law to those facts. *Murray*, 121 Idaho at 921–22, 828 P.2d at 1326–27.

### B.      Ineffective Assistance of Counsel

"The right to counsel in criminal actions brought by the state of Idaho is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho State Constitution." *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010). A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Baxter v. State*, 149 Idaho 859, 862, 243 P.3d 675, 678 (Ct. App. 2010). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *McKeeth v. State*, 140 Idaho 847, 850, 103 P.3d 460, 463 (2004); *Strickland*, 466 U.S. at 687. This Court applies the *Strickland* test when determining whether a defendant has received ineffective assistance of counsel during the plea process. *McKeeth*, 140 Idaho at 850, 103 P.3d at 463. Before deciding

6

whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480–81 (2010). In this case, we conclude that the district court did not err in determining that Harris' representation of Booth during the plea process was deficient and that Booth was prejudiced as a result of such deficiency.

### 1. Deficient Performance

On appeal, the State argues that Booth has not met his burden of demonstrating Harris' performance was deficient because, even though the court ultimately concluded that Harris' interpretation of I.C. § 18-4004 was incorrect, his interpretation was nevertheless objectively reasonable under the circumstances. According to the State, the reasonableness of Harris' interpretation is supported by the fact that the prosecutor also believed that the statute would require the court to impose a fixed life sentence in the event that the jury found a statutory aggravating circumstance. The State further argues that the district court also appeared to agree with Harris' interpretation, given that it intended to provide the jury with a special verdict form instructing them to consider whether a statutory aggravating circumstance had been proven. Lastly, the State contends that Harris' memorandum demonstrates that Harris had carefully reviewed the facts of the case, the evidence that would likely be admitted at trial, and the applicable law, before advising Booth that his best option was to enter a plea of guilty and, therefore, Harris' representation of Booth was not deficient.

In order to demonstrate the attorney's performance was deficient, the defendant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Strickland*, 466 U.S. at 688. In doing so, the defendant must overcome a strong presumption that counsel was competent and diligent in his or her representation of the defendant. *Schoger v. State*, 148 Idaho 622, 624, 226 P.3d 1269, 1271 (2010). Furthermore, "tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation." *Howard v. State*, 126 Idaho 231, 234, 880 P.2d 261, 264 (Ct .App. 1994). "Where a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Dunlap v. State*, 141 Idaho 50, 60, 106 P.3d 376, 386 (2004). Specifically a guilty plea is only valid where the plea represents a

7

voluntary and intelligent choice among the alternative courses of action open to the defendant. *Id.*

Although it appears that this Court has never dealt with the precise issue of whether a defense attorney's erroneous interpretation of a sentencing statute constitutes deficient performance, the United States Supreme Court has recognized that when a statute unambiguously sets forth a particular penalty, an attorney has a duty to provide correct advice regarding such penalty. For example, in *Padilla v. Kentucky*, the Court held that an attorney engaged in deficient performance by failing to advise the defendant that his plea of guilty to drug distribution made him subject to automatic deportation because the consequences of the defendant's guilty plea could easily be determined from reading the removal statute. 130 S. Ct. at 1483. The Court reasoned that,

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. . . . Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect.

*Id.* (internal citations omitted). Although the Court recognized that an attorney engages in deficient performance by rendering advice that is inconsistent with the clear provisions of a statute, the Court was careful to recognize that the result would not be the same where the law is not as clear.

> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* Therefore, an attorney engages in deficient performance by rendering advice regarding potential penalties during the plea process that is inconsistent with the plain and unambiguous provisions of a sentencing statute. *See also* 22 C.J.S. Criminal Law § 422 ("The mere inaccuracy

8

of a prediction regarding sentence will not give rise to a claim for ineffective assistance, but a gross mischaracterization of the likely outcome, combined with erroneous advice on the possible effects of going to trial, falls below the required level of competence.")

In this case, the district court did not err in finding that Harris' performance fell below an objective standard of reasonableness due to his erroneous advice regarding the potential penalty Booth would face if convicted at trial. Harris' interpretation of I.C. § 18-4004 is contrary to the plain and unambiguous language of the statute. I.C. § 18-4004 specifically provides that in first-degree murder cases, "if the death penalty is not sought, the court shall impose a life sentence with a minimum period of confinement of not less than ten (10) years." The language of the statute makes it clear that in cases where the State chooses not to seek the death penalty, the court is required to impose an indeterminate life sentence with at least ten years fixed.

It appears that Harris based his interpretation on the first part of I.C. § 18-4004, which provides,

> Subject to the provisions of sections 19-2515 and 19-2515A, Idaho Code, every person guilty of murder of the first degree shall be punished by death or by imprisonment for life, provided that a sentence of death shall not be imposed unless the prosecuting attorney filed written notice of intent to seek the death penalty as required under the provisions of section 18-4004A, Idaho Code, and provided further that whenever the death penalty is not imposed the court shall impose a sentence. If a jury, or the court if a jury is waived, finds a statutory aggravating circumstance beyond a reasonable doubt but finds that the imposition of the death penalty would be unjust, the court shall impose a fixed life sentence.

I.C. § 18-4004. However, Harris' interpretation is contrary to the plain language of this portion of the statute as well. First and foremost, I.C. § 18-4004 specifically references I.C. §§ 19-2515 and 19-2515A, which are both statutes that are only applicable in capital cases. I.C. § 19-2515A prohibits the court from imposing the death penalty against a "mentally retarded person." I.C. § 19-2515A. Furthermore, I.C. § 19-2515 sets forth the procedures for holding a special sentencing proceeding in capital cases[6] and articulates the instructions to be given to the jury during these

---

[6] I.C. § 19-2515(5) provides,
> If a person is adjudicated guilty of murder in the first degree, whether by acceptance of a plea of guilty, by verdict of a jury, or by decision of the trial court sitting without a jury, and a notice of intent to seek the death penalty was filed and served as provided in section 18-4004A, Idaho Code, a special sentencing proceeding shall be held promptly for the purpose of hearing all relevant evidence and arguments of counsel in aggravation and mitigation of the offense. . . . The special sentencing proceeding shall be conducted before a jury unless a jury is waived by the defendant with the consent of the prosecuting attorney.

proceedings.[7] Finally, I.C. § 19-2515(9) goes on to lay out the various statutory aggravating circumstances that must be proven beyond a reasonable doubt in order to justify the imposition of the death penalty. I.C. § 19-2515(9). The lead-in to subsection 9 states, "[t]he following are statutory aggravating circumstances, at least one (1) of which must be found to exist beyond a reasonable doubt *before a sentence of death can be imposed*." I.C. § 19-2515(9) (emphasis added).

These statutory sections make clear that the provision in I.C. § 18-4004 requiring the jury, or the court if a jury is waived, to impose a fixed life sentence for a first-degree murder conviction in the event that a statutory aggravating circumstance has been proven beyond a reasonable doubt applies only to those cases where the death penalty is sought. Under the statutory scheme, the court is only required to impose a fixed life sentence when (1) the State has filed a notice of intent to seek the death penalty; (2) the State seeks the death penalty; (3) the defendant is convicted of, or pleads guilty to, first-degree murder; (4) a special sentencing proceeding is held during which the jury, or the court if a jury is waived, determines that at least one statutory aggravating circumstance has been proven beyond a reasonable doubt; and (5) after weighing any mitigating evidence against the statutory aggravating circumstances, the jury, or the court if a jury is waived, finds that imposition of the death penalty is unjust. It is clear from the relevant statutes that statutory aggravating circumstances can only be sought in a death penalty case. Because the State did not seek the death penalty in Booth's case, if Booth went to trial and was convicted of first-degree murder, he would have been subject to an indeterminate life sentence with at least ten years fixed, but not a mandatory fixed life sentence, as Harris

---

[7] According to I.C. § 19-2515(7),

> The jury shall be informed as follows:
>
> (a)  If the jury finds that a statutory aggravating circumstance exists and no mitigating circumstances exist which would make the imposition of the death penalty unjust, the defendant will be sentenced to death by the court.
>
> (b)  If the jury finds the existence of a statutory aggravating circumstance but finds that the existence of mitigating circumstances makes the imposition of the death penalty unjust or the jury cannot unanimously agree on whether the existence of mitigating circumstances makes the imposition of the death penalty unjust, the defendant will be sentenced to a term of life imprisonment without the possibility of parole; and
>
> (c)  If the jury does not find the existence of a statutory aggravating circumstance or if the jury cannot unanimously agree on the existence of a statutory aggravating circumstance, the defendant will be sentenced by the court to a term of life imprisonment with a fixed term of not less than ten (10) years.

asserted.[8]

Given that the information Harris provided when advising Booth to plead guilty to first-degree murder was based on a blatantly erroneous reading of the sentencing statutes, the district court did not err in determining that Harris' performance fell below an objective standard of reasonableness. Just as in *Padilla*, the potential penalties in Idaho for first-degree murder in a non-capital case are clear from the statute and, therefore, Harris' duty to give correct advice in that regard is equally clear. It cannot be said that Booth's plea was entered voluntarily when Harris' advice was not within the range of competence demanded of attorneys in criminal cases. *Dunlap*, 141 Idaho at 60, 106 P.3d at 386.

Moreover, the State's argument that Harris' interpretation of I.C. § 18-4004 was reasonable because the district judge and the prosecutor appeared to share the same interpretation is without merit. Just because other parties shared Harris' erroneous interpretation of the statute does not mean Harris' interpretation was reasonable, given that such an interpretation is contrary to the plain and unambiguous language of the statute. Therefore, we find that Booth met his burden of demonstrating that Harris' performance was deficient.

### 2. Prejudice

The State argues that Booth has not met his burden of demonstrating he was prejudiced by Harris' allegedly deficient performance because, even if Booth had insisted on going to trial, he would have still been subject to the same penalty as when he pleaded guilty. The State contends that even if Booth went to trial in hopes of obtaining a conviction for second-degree murder rather than first-degree murder, there no is reason to conclude that his sentence would have been any different and, therefore, rejecting the plea agreement and proceeding to trial would not have been rational under the circumstances. Rather, the State asserts that Booth's best option was to plead guilty and request leniency from the court regarding the sentence.

In order to demonstrate prejudice, the defendant must show "a reasonable probability that the outcome of trial would be different but for counsel's deficient performance." *McKay*, 148 Idaho at 570, 225 P.3d at 703. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). When a defendant alleges

---

[8] On appeal, the State does not argue that Harris' interpretation of the statutes was correct. The State offered such an argument before the district court in support of its Motion to Reconsider. However, the same argument has not been advanced on appeal.

some deficiency in counsel's advice regarding a guilty plea, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In this case, the district court did not err in determining that, but for Harris' erroneous advice regarding the possibility of a fixed life sentence, Booth would have elected to proceed to trial. It is clear from Harris' memorandum that he advised Booth to plead guilty because he believed that there was a strong likelihood Booth would be convicted of first-degree murder and would be subject to a fixed life sentence in the event that the jury also found a statutory aggravating circumstance.

> The bottom line is this. If you go to jury trial, there is the very strong probability of facing a fixed life sentence. That means spending the rest of your life in prison. If you enter a plea to murder with the prosecutor waiving aggravated circumstances, or not requesting the court consider aggravated circumstances, then you would face a minimum period of incarceration of ten years or whatever greater period the judge[] might impose. . . . My recommendation is *because of the strong risk of spending the rest of your life in prison, a plea agreement may be your best option*.

Moreover, the Rule 11 plea agreement was based entirely on Harris and Wolff's erroneous interpretation of the statute. Booth pleaded guilty to first-degree murder in exchange for the State's agreement not to seek "an aggravated circumstance as that term is referenced in Idaho Code 18-4004." The Rule 11 agreement also required the court to refrain from making a "finding of an aggravated circumstance as that term is used in Idaho Code 18-4004 for the purposes of sentencing." Harris was unable to reach an agreement with the State on what the recommended sentence would be at sentencing and, therefore, the plea agreement provided that "the sentence to be imposed is reserved to the sound discretion of the Court." Thus, the sole benefit that Booth received under the plea agreement was the State's agreement not to seek aggravating circumstances—something Booth was never subject to in the first place.

Lastly, Booth filed an affidavit in support of his petition for post-conviction relief, wherein he stated that,

> I pled guilty to First Degree Murder only after my attorney Richard Harris threatened me with a Fixed Life Sentence if I insisted on going to trial. Mr. Harris told me that the judge had told him that he would give the jury a special verdict form asking for an aggravating fact and Mr. Harris told me as well as my family

12

that the jury would find an aggravating factor and that the Court would then be bound to sentence me to a fixed life sentence.

. . .

I wanted to go to trial and to prove that I did not intentionally shoot the victim. I never wanted to plead guilty to the charge. I only plead [sic] guilty because Mr. Harris told me I would get a Fixed Life Sentence and that the Judge would be bound to give it to me and if I plead [sic] guilty I would only get 10 years.

When asked at the evidentiary hearing what had convinced him to plead guilty, Booth responded, "[t]he fact that my attorney, the person who represented me, Richard Harris, repeatedly told me that if I did take this to trial, there is a huge chance that I would do life in prison . . . . I would die in prison." Based on this evidence, the district court did not err in determining that but for Harris' error, Booth would not have pleaded guilty and would have insisted on going to trial.

The State's arguments on appeal fail for several reasons. First, the State misstates the law when arguing that "even if Booth would have insisted on going to trial in the hopes of obtaining a conviction on second-degree murder rather than first-degree murder, Booth would have faced the same potential penalty he believed he was subject to when he pled guilty to first-degree murder, *i.e.*, up to life with a minimum of ten years fixed." Contrary to the State's assertion, the potential penalty for first-degree murder differs significantly from the potential penalty for second-degree murder. Under I.C. § 18-4004, second-degree murder is "punishable by imprisonment not less than ten (10) years and the imprisonment may extend to life." I.C. § 18-4004. In contrast, following a conviction for first-degree murder, in cases where the death penalty is not sought, the court is required to impose an indeterminate life sentence with a minimum period of confinement of not less than ten years. I.C. § 18-4004. In other words, a defendant convicted of first-degree murder automatically receives an indeterminate life sentence with a fixed term of ten years, while a defendant convicted of second-degree murder only faces a unified term of not less than ten years. Therefore, the State erroneously argues that Booth would have faced the same potential penalty if he were convicted of second-degree murder after trial.

More importantly, the State's arguments demonstrate a fundamental misunderstanding of the law as it relates to the prejudice prong of the *Strickland* test. The State's arguments focus on the fact that Booth has not demonstrated that the outcome of his case, specifically, his sentence, would have been any different if he went to trial. However, in this context, the relevant inquiry is whether, but for Harris' errors, Booth would not have pleaded guilty and would have insisted on

13

going to trial. *Ridgley*, 148 Idaho at 676, 227 P.3d at 930. As this Court has previously noted, the focus is "on the defendant's state of mind when choosing to plead guilty," and there is no requirement that the Court speculate as to the potential sentence for a lesser charged offense should the jury convict on that basis at retrial. *McKeeth*, 140 Idaho at 853, 103 P.3d at 466. Thus, the State's arguments fail because they do not address Booth's state of mind when pleading guilty or how his state of mind was affected by Harris' erroneous advice.[9] As mentioned above, the evidence demonstrates that Booth would not have pleaded guilty and would have insisted on going to trial if were not for Harris' advice regarding the potential of a fixed life sentence.

## IV.
## Conclusion

The district court did not err in concluding that Booth met his burden of demonstrating Harris' performance was deficient and that he was prejudiced as a result. Therefore, we affirm the district court's decision to grant Booth's petition for post-conviction relief.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.

---

[9] The State also appears to argue that Booth was not prejudiced because his best option was to plead guilty and request leniency from the court based on the victim's mutual involvement in the drug community, his own drug addiction at the time of the murder, and his assertion that he acted out of fear for the safety of himself and his family. Although the State may be correct that Booth likely benefited by taking responsibility and pleading guilty to the crime, such a factor is not relevant in determining whether Booth has met his burden of demonstrating prejudice. As the United States Supreme Court has noted,

> The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle. Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to conviction obtained after a jury trial has no similar downside potential.

*Padilla*, 130 S. Ct. at 1485–86 (emphasis in original). Therefore, the fact that Booth may have benefited by pleading guilty instead of going to trial is not relevant to whether he was prejudiced by Harris' deficient performance.