# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39400

JEFFREY DANE MURRAY,     )
             )   **Boise, January 2014 Term**
  **Petitioner-Appellant,**   )
             )   **2014 Opinion No. 31**
v.            )
             )   **Filed: March 19, 2014**
STATE OF IDAHO,     )
             )   **Stephen Kenyon, Clerk**
  **Respondent.**     )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

The district court's dismissal of Murray's petition for post-conviction relief is <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant. Spencer Hahn argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Jessica Lorello argued.

_____

HORTON, Justice.

Jeffrey Dane Murray appeals from the district court's order dismissing his petition for post-conviction relief after he pleaded guilty to felony domestic violence and was sentenced to three years fixed followed by seven years indeterminate. Murray's petition for post-conviction relief argued, among other things, that his trial counsel was constitutionally ineffective–an argument that he reasserts now on appeal. We affirm the district court's dismissal of Murray's petition for post-conviction relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2009, Murray was charged with felony attempted strangulation and misdemeanor battery. Subsequently, the district court held a pretrial conference on July 13, 2009. At the hearing, the State and Murray's trial counsel, Jared Martens, entered into plea negotiations. After a short discussion, Martens represented to the court that the parties had reached an agreement. Under the parties' agreement, Murray agreed to plead guilty to a felony

1

charge of domestic violence and to submit to a domestic violence evaluation. In exchange, the State agreed to dismiss a felony charge of attempted strangulation and a misdemeanor charge of battery and recommend a sentence of three years fixed followed by seven years indeterminate, suspended, and 120 days in jail. After hearing the parties' proposed agreement, the district judge questioned the parties:

**The Court:** Okay, is there an Estrada waiver?

**Ms. Buttram:** I believe so.

**The Court:** Well, I think there would have to be. I am not going to [accept the plea agreement] without an Estrada waiver.

**Mr. Martens:** Just a moment, let me talk to the prosecutor.

(Brief delay.)

**Mr. Martens:** Yes, that's fine. He will waive, Your Honor.

**The Court:** Is that what you want to do, Mr. Murray?

**The Defendant:** Yes, ma'am.

The district court then took a recess to allow Murray to complete the court's Guilty Plea Advisory Form. Murray, with the help of Martens, then executed the Guilty Plea Advisory Form.

The Guilty Plea Advisory Form signed by Murray expressly references the rights outlined by this Court in *Estrada v. State*, 143 Idaho 558, 149 P.3d 833 (2006), stating:

I understand that by pleading guilty I am waiving my right to remain silent about the charge I am pleading guilty to both before and after trial.

The waiver of your right to remain silent only applies to your plea of guilty to the crimes(s) in this case unless you are waiving your rights under State v. Estrada [sic]. Unless you waive your rights under Estrada, even after pleading guilty, you will still have the right to refuse to answer any question or to provide any information that might tend to show you committed some other crime(s). You can also refuse to answer or provide information that might tend to increase the punishment for the crime(s) to which you are pleading.

> I understand that by pleading guilty to the crimes(s) in this case, I still have the right to remain silent with respect to any other crimes(s) and with respect to answering questions or providing information that may increase my sentence.

Murray initialed each of the above paragraphs, "J.M." on the Guilty Plea Advisory Form. The Guilty Plea Advisory Form also stated:

> I understand that my plea agreement is a non-binding plea agreement. This means that the court is not bound by the agreement or any sentencing recommendations, and may impose any sentence authorized by the law, up to the maximum sentence for any offense.

After the Guilty Plea Advisory Form was executed, the court reconvened. The court asked Martens, "You went over the guilty plea advisory form with [Murray]?" Martens responded, "[Y]es, we just did." The court then questioned Murray about his decision to plead guilty:

> **[The Court]**: Have you had any trouble understanding your lawyer?
>
> **[Murray]**: No, ma'am.
>
> ….
>
> **[The Court]**: Did he tell you to your satisfaction what your rights and defenses are?
>
> **[Murray]**: Yes, ma'am.
>
> ….
>
> **[The Court]**: And you understand that you are giving up your rights under State versus Estrada, and that means that you cannot refuse to answer any question or provide any information that might tend to show you committed some other crime? You need to talk freely and openly with the presentence investigator and with any domestic violence evaluator about any problems that you might have that might have a bearing upon sentencing.
>
> **[Murray]**: Yes, ma'am.
>
> **[The Court]**: And you are aware of that?

**[Murray]**: Yes, ma'am.

Thereafter, the district court accepted Murray's guilty plea and ordered a domestic violence evaluation.

Murray's sentencing hearing was held on September 8, 2009. Based on Murray's domestic violence evaluation and his presentence report, the district court found that Murray was not manageable on probation and that he presented a high risk of re-offense. Because the district court did not feel that the recommended sentence adequately protected society, it chose not to follow the State's recommendation and instead sentenced Murray to prison for ten years, with three years fixed. Murray did not appeal his sentence. Instead, he filed a motion to reduce his sentence pursuant to I.C.R. 35. The district court denied this motion. Murray appealed the district court's denial of his I.C.R. 35 motion to the Idaho Court of Appeals, which affirmed the district court. *See State v. Murray*, No. 37482, 2010 WL 9590129 (Ct. App. Nov. 1, 2010).

On October 27, 2010, Murray filed a petition for post-conviction relief. In his petition, Murray argued that his guilty plea should be vacated because: (1) it was not knowing, voluntary, and intelligent; (2) his counsel at the plea and sentencing hearings was constitutionally ineffective; and, (3) his counsel during post-trial proceedings was constitutionally ineffective. An evidentiary hearing on Murray's petition was held on May 31, 2011. At the hearing, Murray stated that had he known that the domestic violence evaluation could be used to increase his sentence he would have "discussed it with an attorney at the time [and] probably would have not taken it or received my own personal evaluation." The district court issued its decision on October 20, 2011, and dismissed Murray's petition after concluding that Murray failed to meet his burden to show that he was entitled to post-conviction relief.

On November 11, 2011, Murray filed his notice of appeal from the district court's dismissal of his petition for post-conviction relief pursuant to I.A.R. 11(a)(1). On December 11, 2013, this Court conditionally dismissed this appeal because the decision of the district court was not a final, appealable judgment, as contemplated by I.R.C.P. 54(a). However, on December 17, 2013, the district court entered its Judgment Nunc Pro Tunc, effective October 20, 2011, dismissing Murray's petition for post-conviction relief with prejudice and this Court reinstated Murray's appeal.

4

## II. STANDARD OF REVIEW

"Post-conviction proceedings are civil in nature and therefore the applicant's allegations must be proven by a preponderance of the evidence." *McKeeth v. State*, 140 Idaho 847, 849, 103 P.3d 460, 462 (2004) (citing *McKinney v. State*, 133 Idaho 695, 699–700, 992 P.2d 144, 148–49 (1999)). "When appellate review of a district court's denial of post-conviction relief follows an evidentiary hearing, rather than a summary dismissal, the evidence must be 'viewed most favorably to the trial court's findings.' " *Id.* (quoting *State v. Mathews*, 133 Idaho 300, 304, 986 P.2d 323, 327 (1999)). On review, "this Court will not disturb the district court's factual findings unless they are clearly erroneous." *McKinney*, 133 Idaho at 700, 992 P.2d at 149 (citing I.R.C.P. 52(a)). However, "[t]his Court exercises free review of the district court's application of the relevant law to the facts." *McKeeth*, 140 Idaho at 849–50, 103 P.3d at 462–63. "If a district court reaches the correct result by an erroneous theory, this Court will affirm the order upon the correct theory." *McKinney*, 133 Idaho at 700, 992 P.2d at 149. Additionally, "[c]onstitutional issues are pure questions of law over which this Court exercises free review." *Estrada*, 143 Idaho at 561, 149 P.3d at 836 (citing *Quinlan v. Idaho Comm'n for Pardons & Parole*, 138 Idaho 726, 729, 69 P.3d 146, 149 (2003)).

## III. ANALYSIS

Murray argues that the district court erred in dismissing his petition for post-conviction relief because Martens' representation was constitutionally ineffective for two reasons. First, Murray argues that Martens was ineffective in failing to advise him of his rights under *Estrada* and whether to waive those rights. Second, Murray argues that Martens was ineffective in failing to advise him that he could obtain a private confidential domestic violence evaluation prior to accepting the State's plea offer.

"The right to counsel in criminal actions brought by the state of Idaho is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho State Constitution." *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011) (quoting *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010)). "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). A defendant's constitutional right to counsel only extends to the "critical stages" of proceedings. *United States v. Wade*, 388 U.S. 218, 224–25 (1967). "It therefore follows that, if the stage is not critical, there can be no

constitutional violation, no matter how deficient counsel's performance." *United States v. Benlian*, 63 F.3d 824, 827 (9th Cir. 1995). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.' " *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann*, 397 U.S. at 771).

This Court applies the two-prong *Strickland* test to determine if a defendant has received ineffective assistance of counsel during the plea process. *Booth*, 151 Idaho at 617, 262 P.3d at 260. Under *Strickland*, "[t]o prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency." *Id*. "To prove deficient performance, the appellant 'must show the attorney's representation fell below an objective standard of reasonableness.' " *State v. Dunlap*, 155 Idaho 345, __, 313 P.3d 1, 39 (2013) (quoting *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004)). "To demonstrate prejudice, the appellant 'must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different.' " *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. __, __, 131 S.Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 694). To undermine confidence in the outcome "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Id*. (quoting *Harrington v. Richter*, 562 U.S. __, __, 131 S.Ct. 770, 791 (2011)). Additionally, "[w]hen a defendant alleges some deficiency in counsel's advice regarding a guilty plea, the defendant must demonstrate that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Booth*, 151 Idaho at 621, 262 P.3d at 264 (quoting *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010)). Under the *Strickland* standard, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690.

**A. The district court did not err in dismissing Murray's petition for post-conviction relief because Murray failed to show, by a preponderance of the evidence, that Martens' representation constituted ineffective assistance of counsel.**

The district court addressed Murray's argument that Martens was ineffective in failing to advise him of his Fifth Amendment right against self-incrimination during a domestic violence evaluation. Relying on *Gonzales v. State*, 151 Idaho 168, 254 P.3d 69 (Ct. App. 2011), the district court concluded that although Martens did not advise Murray of his rights under *Estrada*, he was not constitutionally ineffective because the court advised Murray of his *Estrada* rights

6

prior to Murray pleading guilty and participating in the court-ordered evaluation. Thus, Martens was not required to advise Murray of his *Estrada* rights again.

On appeal, Murray raises the same argument, and asserts that the district court erred in dismissing his petition for post-conviction relief because Martens was ineffective. Murray argues that Martens' representation was deficient in failing to advise him of his *Estrada* rights and that he was prejudiced by this because he then participated in a damaging court-ordered domestic violence evaluation. Murray concedes that the district court properly applied *Gonzales*. However, Murray argues that the Court of Appeals' decision in *Gonzales* should be reversed by this Court because it improperly diminished the right to the advice of counsel regarding participation in a court-ordered evaluation established in *Estrada*.

Careful consideration of this Court's opinion in *Estrada* and the Idaho Court of Appeals' decision in *Gonzales* is required to resolve Murray's claims. The defendant in *Estrada* pleaded guilty to rape, the court advised him that he was waiving his right against self-incrimination, and ordered him to participate in a psychosexual evaluation pursuant to Idaho Code section 18–8316. 143 Idaho at 560, 149 P.3d at 835. Relying in part on the psychosexual evaluation, which indicated that Estrada had an extremely violent nature and a low level of treatment motivation, the court imposed a life sentence with twenty-five years fixed. *Id*. Estrada filed a petition for post-conviction relief claiming ineffective assistance of counsel and argued that his attorney should have advised him that, even after pleading guilty, he retained his right against self-incrimination and was not required to participate in the psychosexual evaluation. *Id*. On appeal from the denial of Estrada's petition, this Court held that participation in a psychosexual exam constituted a critical stage of proceedings and "that a defendant has a Sixth Amendment right to counsel regarding only the decision of whether to submit to a psychosexual exam" but not the actual presence of counsel at the examination.[1] *Id*. at 562–63, 149 P.3d 837–38. Adopting a broad definition of "incrimination,"[2] we also held that Estrada could assert his Fifth Amendment right against self-incrimination during his evaluation. *Id*. at 564, 149 P.3d at 839. Applying *Strickland*, this Court then held that Estrada's counsel was deficient in failing to inform Estrada of his right to assert the privilege against self-incrimination during his psychosexual evaluation

---

[1] "*Estrada* limits its holding to the advice of counsel prior to participating in the investigation." *State v. Draper*, 151 Idaho 576, 597, 261 P.3d 853, 874 (2011).

[2] "Incrimination is implicated not just when additional charges could be filed, but also when punishment could be enhanced as a result of the defendant's statements." *Estrada*, 143 Idaho at 564, 149 P.3d at 839.

and that the deficiency resulted in prejudice because the district court relied on the evaluation in sentencing Estrada. *Id*. at 564–65, 149 P.3d 839–40. In sum, *Estrada* "held that a psychosexual evaluation is a critical stage of a criminal prosecution such that the defendant has a Sixth Amendment right to the advice of counsel about whether to undergo an evaluation and a Fifth Amendment right to refuse to participate in the evaluation." *Meier v. Smith*, No. 1:10-cv-00351-BLW, 2011 WL 3837295, at *3 (D. Idaho Aug. 29, 2011).

The scope of a defendant's right to the advice of counsel articulated by *Estrada* was addressed by the Idaho Court of Appeals in *Gonzales*. Like the defendant in *Estrada*, the defendant in *Gonzales* was ordered by the sentencing court to undergo a psychosexual evaluation. 151 Idaho at 170, 254 P.3d at 71. However, unlike the defendant in *Estrada*, the district court in *Gonzales* informed the defendant that he retained his right to remain silent during the evaluation and could say nothing at all during the evaluation if he wished. *Id*. at 172, 254 P.3d at 73. On appeal to the Idaho Court of Appeals from a denial of his petition for post-conviction relief, Gonzales argued that his counsel was ineffective for failing to advise him of his *Estrada* rights. *Id*. In *Gonzales*, the Court of Appeals properly interpreted this Court's holding in *Estrada* stating, "[t]he right to counsel prior to a psychosexual evaluation extends only to advice regarding the defendant's decision whether to submit to the evaluation. Such advice requires counsel to inform the defendant of his or her Fifth Amendment right to remain silent as to the psychosexual evaluation." *Id*. at 173, 254 P.3d at 74 (internal citation omitted).

The *Gonzales* court held that the requirements of *Estrada* could be fulfilled by the sentencing court. In so holding, the Court of Appeals stated that "[w]hile it is preferable for counsel to advise a defendant of his right to remain silent … counsel may not be deficient for failing to readvise the defendant once the sentencing court has done so." *Id*. It is this portion of *Gonzales* that Murray asks the Court to overrule in this case because Murray asserts that a court's statements concerning a defendant's *Estrada* rights are not the functional equivalent of an attorney's advice. We agree in part with Murray, as discussed below.

1. **Martens' failure to advise Murray of his *Estrada* rights does not constitute ineffective assistance of counsel.**

   a. **The district court erred in holding that Martens' representation of Murray was not deficient.**

In this case, the district court found that "[t]here is no question that [Murray's] counsel did not advise him of his right to remain silent at the domestic violence evaluation as required by

8

*Estrada v. State* … nor did he discuss the consequences of waiving that right. However, there is also no question that the Court did advise him of these rights in page one of the Guilty Plea Advisory Form." Page one of the Guilty Plea Form provided:

> I understand that by pleading guilty I am waiving my right to remain silent about the charge I am pleading guilty to both before and after trial. The waiver of your right to remain silent only applies to your plea of guilty to the crimes(s) in this case unless you are waiving your rights under State v. Estrada [sic]. Unless you waive your rights under Estrada, even after pleading guilty, you will still have the right to refuse to answer any question or to provide any information that might tend to show you committed some other crime(s). You can also refuse to answer or provide information that might tend to increase the punishment for the crime(s) to which you are pleading.

The above paragraph was initialed by Murray, indicating that he read and understood its content. Based on the text of the Guilty Plea Advisory Form and the Court of Appeals' decision in *Gonzales*, the district court concluded that Murray's counsel was not ineffective in this case. Specifically, the district court stated that because the court had informed Murray of his *Estrada* rights his counsel was not required to do so again. This was an error because the district court's actions in informing Murray of his *Estrada* rights do not affect the Court's analysis under the deficiency prong of *Strickland*. This is because the district court's conduct in informing Murray of his *Estrada* rights did not eliminate Martens' obligation to inform Murray of his rights. In *Estrada*, we clearly held that "Estrada's attorney was deficient in failing to inform his client of [his Fifth Amendment right against self-incrimination]." 143 Idaho at 564, 149 P.3d at 839. Like Estrada's counsel, Murray's counsel also failed to inform him that he retained his Fifth Amendment right against self-incrimination during his court-ordered domestic violence evaluation. Accordingly, this Court finds that Martens, in failing to apprise Murray of his *Estrada* rights, was objectively deficient, despite the district court's efforts to inform Murray of his *Estrada* rights and the consequences of waiving his rights. Therefore, the district court's reliance on *Gonzales* for the proposition that "counsel may not be deficient for failing to readvise the defendant once the sentencing court has done so" was erroneous.

**b. Murray was not prejudiced by Martens' deficiency because Murray was properly apprised of his *Estrada* rights by the district court.**

9

Unlike the deficiency prong of *Strickland*, which focuses purely on counsel's conduct, the district court's efforts to inform Murray of his *Estrada* rights bear on the prejudice prong of *Strickland*. In this case, the district court ensured that Murray was properly apprised of, and understood, his *Estrada* rights, as well as the consequences of waiving his *Estrada* rights. At Murray's guilty plea hearing, the parties, on the record, indicated to the court that they had reached a plea agreement. After presenting the terms of the agreement to the court, the district judge asked "is there an Estrada waiver …. I think there would have to be. I'm not going to take [the plea agreement] without an Estrada waiver." After a brief delay for discussion among the parties, Murray's counsel indicated, on the record, that Murray agreed to waive his *Estrada* rights. When asked by the court, Murray reiterated that he wished to waive his *Estrada* rights. This discourse gave Murray notice that his *Estrada* rights were at issue and would be waived if he chose to proceed with the plea agreement.

Because the parties had not completed the district court's Guilty Plea Advisory Form, the court took a recess so that Murray could read and complete the court's form before formally pleading guilty. The Guilty Plea Advisory Form, as referenced above, specifically addressed *Estrada*, and properly conveyed that:

> Unless you waive your rights under Estrada, even after pleading guilty, you will still have the right to refuse to answer any question or to provide any information that might tend to show you committed … other crime(s) …. [O]r … that might tend to increase the punishment for the crime(s) to which you are pleading.

Murray affirmatively indicated, by initialing the Guilty Plea Advisory Form, that he understood his rights under *Estrada*, with respect to answering questions that could potentially increase his sentence. After Murray completed the Guilty Plea Advisory Form, the court returned from its recess and the district judge asked Murray if he went over the Guilty Plea Advisory Form with his attorney, to which he responded, "[y]es, ma'am." The court then asked Murray if he understood that in pleading guilty in this specific case he was also waiving his rights under *Estrada* by the terms of the plea agreement.[3] Murray indicated that he was aware and that he understood that he was waiving his *Estrada* rights under the terms of the plea agreement.[4]

---

[3] The Guilty Plea Advisory Form specifically stated that one of the terms of the plea agreement was "DV Eval + comply."

[4] A defendant may waive constitutional rights "if the entire record shows the waiver was made voluntarily, knowingly, and intelligently." *State v. Cope*, 142 Idaho 492, 496, 129 P.3d 1241, 1245 (2006).

10

After being fully informed of his *Estrada* rights, and despite the court's requirement that he waive his *Estrada* rights and fully comply with the court ordered domestic violence evaluation, Murray still pleaded guilty. The record conclusively establishes that Murray understood his rights under *Estrada* and was aware that in order for the court to accept the parties' plea agreement he would have to waive his *Estrada* rights. Because the record establishes that Murray fully understood his *Estrada* rights and voluntarily waived them, Murray has failed to meet the *Pinholster* standard by demonstrating a substantial likelihood of different result in this case had Martens' representation not been deficient. Furthermore, under this Court's decision in *Booth*, Murray has also failed to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 151 Idaho 612, 621, 262 P.3d 255, 264 (2011) (quoting *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010)). Accordingly, Murray has failed to show the requisite prejudice necessary to establish an ineffective assistance of counsel claim under *Strickland*.

**2. Murray has waived his argument that Martens was ineffective in failing to inform him of his right to a confidential evaluation because Murray has not offered any law or authority to establish that Martens' representation was constitutionally deficient.**

The district court addressed Murray's argument that Martens was ineffective because he failed to advise Murray that he could obtain a confidential domestic violence evaluation before he pleaded guilty and participated in the domestic violence evaluation. Again, the district court relied on *Gonzales*, stating "the Court of Appeals held that there was no obligation to obtain a confidential defense evaluation to inform the defense decision to participate in a court-ordered evaluation and that the failure to do so was not ineffective assistance of counsel." Accordingly, the district court held that Murray failed to show that Martens was ineffective in failing to inform Murray of his ability to participate in a confidential domestic violence evaluation prior to pleading guilty.

On appeal, Murray argues that the district court erred in dismissing his petition for post-conviction relief because Martens was ineffective in failing to inform him of his right to obtain a confidential domestic violence evaluation prior to pleading guilty. Further, Murray argues that Martens' failure constituted deficient performance and prejudiced him by causing him to plead guilty and submit to an evaluation that ultimately proved detrimental.

11

In response, the State argues that Martens was not deficient in failing to advise Murray that he could obtain a confidential evaluation prior to pleading guilty pursuant to the State's offer. Additionally, the State contends that Murray has failed to provide any authority for the proposition that trial counsel is deficient for failing to advise a client of their ability to seek a confidential evaluation prior to pleading guilty; the State is correct.

Like any issue raised on appeal, an appellant asserting that his trial counsel was ineffective must support his argument with propositions of law, authority, and argument, otherwise it will not be considered. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). "A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking." *State v. Wood*, 132 Idaho 88, 94, 967 P.2d 702, 708 (1998) (quoting *Zichko*, 129 Idaho at 263, 923 P.2d at 970).

In this case, although Murray has provided argument that his counsel was deficient in failing to inform him of his ability to obtain a confidential domestic violence evaluation prior to pleading guilty, he has not provided a single authority or legal proposition to support his argument. Murray merely states, without support, that his counsel's failure to advise him of his ability to undergo a confidential evaluation "represented deficient performance."

As noted above, in order "[t]o prove deficient performance, the appellant 'must show the attorney's representation fell below an objective standard of reasonableness.' " *State v. Dunlap*, 155 Idaho 345, __, 313 P.3d 1, 39 (2013) (quoting *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004)). Murray has not offered any authority whatsoever, nor has this Court discovered any authority, suggesting that failing to inform a client of their ability to seek a confidential evaluation prior to pleading guilty falls below an objective standard of reasonableness. Accordingly, Murray has waived his ineffective assistance of counsel claim predicated on Martens' failure to inform Murray of his right to seek a confidential evaluation prior to pleading guilty.

## IV. CONCLUSION

We affirm the district court's dismissal of Murray's petition for post-conviction relief and award costs on appeal to the State.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.