IN THE SUPREME COURT OF THE STATE OF IDAHO

| | | |
|---|---|---|
| JOHN DAVID WURDEMANN, | ) | Docket No. 43384 |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Boise, January 2017 Term |
| v. | ) | |
| | ) | 2017 Opinion No. 24 |
| STATE OF IDAHO, | ) | |
| | ) | Filed: February 28, 2017 |
| Respondent. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| JOHN DAVID WURDEMANN, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | Docket No. 39173 |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Renae J. Hoff, District Judge.

District court grant of post-conviction relief, <u>affirmed.</u>

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen, Deputy Idaho Attorney General argued.

Elisa G. Massoth, Payette, argued for respondent.

---

BURDICK, Chief Justice

The State appeals the Canyon County District Court's grant of post-conviction relief for John David Wurdemann. Wurdemann was convicted on seven felony counts related to the June 2000 attack of Linda LeBrane. In its order, the district court ruled that Wurdemann's Sixth Amendment right to counsel was violated because trial counsel failed to properly challenge the admission of eyewitness identifications. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Wurdemann was convicted on seven felony counts[1] related to the June 2000 attack of Linda LeBrane.[2] *State v. Wurdemann*, No. 30438 (Idaho Ct. App. Feb. 28, 2006) (unpublished). In 2006, Wurdemann's direct appeal was denied by the Court of Appeals. *Id.* In 2011, Wurdemann was denied post-conviction relief, and he appealed that denial. In July 2012, while his post-conviction appeal was pending, Wurdemann filed an Idaho Rule of Civil Procedure 60(b) Motion, Relief from a Judgment or Order. The district court granted the motion and in March 2015, held a new evidentiary hearing on whether Wurdemann was denied his Sixth Amendment right to effective assistance of counsel. Following the evidentiary hearing, the district court ruled that Wurdemann was denied his right to the effective assistance of counsel and vacated his convictions. The State appeals.

# II. STANDARD OF REVIEW

"The right to grant or deny relief under I.R.C.P. 60(b) is a discretionary one. Thus, absent a showing of arbitrary disregard for the relevant facts and principles of law by the court below, this Court will affirm the lower court's decision to deny or grant relief under I.R.C.P. 60(b)." *Sherwood & Roberts, Inc. v. Riplinger*, 103 Idaho 535, 541, 650 P.2d 677, 683 (1982).

"When reviewing a district court's decision to grant or deny a petition for post-conviction relief following an evidentiary hearing, this Court will not disturb the district court's factual findings unless they are clearly erroneous." *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011).

# III. ANALYSIS

The State raises two primary arguments on appeal. First, the State argues the district court erred by granting Wurdemann's Rule 60(b) motion, which allowed Wurdemann to purse his post-conviction claim of ineffective assistance of counsel. Second, the State argues the district

---

[1] The counts are: conspiracy to commit robbery; robbery; conspiracy to commit first-degree kidnapping; first-degree kidnapping; aggravated battery; aiding and abetting first-degree arson; and aiding and abetting attempted first-degree murder.

[2] The Court of Appeals described the attack as follows: "The crimes that gave rise to this prosecution occurred in the early morning hours of June 15, 2000, when four people in another vehicle forced Linda LeBrane to stop her car on Interstate 84 in Canyon County, demanded money and drugs from her, commandeered her vehicle, and drove her to a dark field along a country road. There, the foursome took LeBrane's money, credit cards, and belongings, stabbed her repeatedly, slit her throat, hit her in the head with a baseball bat, slashed her shoulder, set her car on fire, and left her to die." *State v. Wurdemann*, No. 30438 (Idaho Ct. App. Feb. 28, 2006) (unpublished).

court incorrectly granted Wurdemann's post-conviction claim of ineffective assistance of counsel. We address each claim in turn.

**A. The district court's grant of Wurdemann's Rule 60(b) motion.**

Idaho Appellate Rule 11(a)(7) states that an appeal as a matter of right may be taken from "[a]ny order made after final judgment including an order denying a motion to set aside a default judgment . . . ." I.A.R. 11(a)(7). Here, final judgment in Wurdemann's post-conviction hearing was entered on September 15, 2011. The order granting Wurdemann's I.R.C.P. 60(b) motion was entered on July 5, 2013. Thus, the order granting Wurdemann's I.R.C.P. 60(b) motion was an "order made after final judgment." As such, the district court's order granting Wurdemann's I.R.C.P. 60(b) motion was appealable as a matter of right. I.A.R. 11(a)(7); *Wheeler v. McIntyre*, 100 Idaho 286, 288–89, 596 P.2d 798, 800–01 (1979) ("Considering first the appealability of this order, we note that I.A.R. 11(a)(5) permits an appeal as a matter of right from 'any order made after final judgment.' Since the order denying the motions is one made after final judgment, it is appealable . . . .").

Under Idaho Appellate Rule 14:

> Any appeal as a matter of right from the district court may be made only by physically filing a notice of appeal with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment or order of the district court appealable as a matter of right in any civil or criminal action.

I.A.R. 14(a).

The filing stamp on the district court's I.R.C.P. 60(b) order is July 5, 2013. The State filed its notice of appeal on July 16, 2015. This was well beyond the mandatory forty-two-day filing period allowed under Idaho Appellate Rule 14(a). *Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 58, 205 P.3d 1192, 1194 (2009) ("Any appeal as a matter of right from the district court must be filed within forty-two days of the judgment." (citing I.A.R. 14(a))). Because the State did not appeal the district court's order granting Wurdemann's I.R.C.P. 60(b) motion within forty-two days, we dismiss the State's arguments regarding whether Wurdemann's I.R.C.P. 60(b) motion was properly granted and affirm the district court's grant of the motion. *Id.* at 58–59, 205 P.3d at 1194–95 ("Failure to comply with time restrictions is jurisdictional 'and shall cause automatic dismissal of such appeal.' " (quoting I.A.R. 21)).

3

**B. The district court's finding of ineffective assistance of counsel.**

Following the grant of Wurdemann's I.R.C.P. 60(b) motion, the district court held an evidentiary hearing on the issue of whether Wurdemann was denied effective assistance of counsel in violation of his Sixth Amendment rights. The district court found that Wurdemann was denied his right to effective assistance of counsel because trial counsel failed to properly challenge LeBrane's eyewitness identification of Wurdemann at trial. The State appeals this ruling, arguing that Wurdemann has failed to meet his burden to show that his counsel's performance fell below an objective standard of reasonableness.

> When reviewing a district court's decision to grant or deny a petition for post-conviction relief following an evidentiary hearing, this Court will not disturb the district court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Murray*, 121 Idaho at 921, 828 P.2d at 1326; *Strickland v. Washington*, 466 U.S. 668, 698 (1984). When faced with a mixed question of fact and law, the Court will defer to the district court's factual findings if supported by substantial evidence, but will exercise free review over the application of the relevant law to those facts. *Murray*, 121 Idaho at 921–22, 828 P.2d at 1326–27.

*Booth*, 151 Idaho at 617, 262 P.3d at 260.

Ineffective assistance of counsel requires a finding that (1) the attorney's performance was deficient and (2) the defendant was prejudiced by the deficiency. *Icanovic v. State*, 159 Idaho 524, 529, 363 P.3d 365, 370 (2015) ("A defendant alleging ineffective assistance of counsel must show both deficient performance by counsel and prejudice from that deficiency; failing to prove either prong individually or both will defeat a claim of ineffective assistance of counsel." (citing *Strickland*, 466 U.S. at 687)).

1. <u>Trial counsel's performance was deficient.</u>

To demonstrate that an attorney's performance was deficient, the "claimant has the burden of showing that [his] attorney's representation fell below an objective standard of reasonableness." *Schoger v. State*, 148 Idaho 622, 624, 226 P.3d 1269, 1271 (2010); *accord Strickland*, 466 U.S. at 688. In doing so, the claimant faces "a strong presumption that counsel was competent and diligent in his or her representation of the defendant." *Booth*, 151 Idaho at 618, 262 P.3d at 261. Ultimately, "the standard for evaluating attorney performance is objective reasonableness under prevailing professional norms." *State v. Mathews*, 133 Idaho 300, 306, 986 P.2d 323, 329 (1999). However, counsel's strategic and tactical decisions "cannot

justify relief 'unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review.' " *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010) (quoting *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008)).

The district court ruled that "trial counsel's failure to consult with an expert witness and provide a proper challenge to the lineups and identifications fell below an objective standard of reasonableness . . . ." Specifically, the district court found that counsel's failure to consult an expert on eyewitness identification and counsel's failure to challenge the eyewitness' identifications in pre-trial motions was so deficient that "this conduct denied [Wurdemann] a proper functioning adversarial system."

    a. Trial counsel's failure to file a motion to challenge LeBrane's identification of Wurdemann in the video lineup.

When a claimant alleges ineffective assistance of counsel based on counsel's failure to file a motion, a "critical inquiry is whether the motion, if filed, should have been granted . . . ." *State v. Dunlap*, 155 Idaho 345, 385, 313 P.3d 1, 41 (2013); *Payne*, 146 Idaho at 562, 199 P.3d at 137 (2008) ("Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the [*Strickland*] test." (alteration in original) (quoting *Sanchez v. State*, 127 Idaho 709, 713, 905 P.2d 642, 646 (Ct. App. 1985))). Thus, an initial inquiry is whether a pre-trial motion to suppress the eyewitness identification, had it been made, would have been denied. *Hollon v. State*, 132 Idaho 573, 579, 976 P.2d 927, 933 (1999) ("When considering whether an attorney's failure to file or pursue a motion to suppress constitutes incompetent performance, the Court is required to examine the probability of success of such a motion . . . ."); *Payne*, 146 Idaho at 562, 199 P.3d at 137 ("In order to determine if counsel's failure to object fell below a reasonable standard, this Court must first determine whether [the witness's] identification should have been suppressed.").

In *Crawford v. State*, we implied in dicta that a decision regarding "a motion to suppress is not a tactical or strategic decision." 160 Idaho 586, 593 n.3, 377 P.3d 400, 407 n.3 (2016). Under certain circumstances, however, it is entirely plausible that a decision not to file a motion to suppress could be a strategic decision. Thus, we hold that while claims of ineffective assistance of counsel that center on counsel's failure to file a motion to suppress require us to first determine whether or not the motion should have been granted, *e.g.*, *Hollon*, 132 Idaho at

5

579, 976 P.2d at 933 ("[T]he Court is required to examine the probability of success of such a motion . . . ."), once it has been determined the motion, had it been filed, should have been granted, the petitioner is still required to overcome the presumption that the decision not to file the motion "was within the wide range of permissible discretion and trial *strategy*." *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006) (emphasis added).

     i.   <u>Whether the motion to suppress, had it been made, should have been granted.</u>

"Due process requires the exclusion of identification evidence if police suggestiveness created a substantial risk of mistaken identification, except where the reliability of the identification is sufficient to outweigh the corrupting effect of the suggestive identification." *State v. Trevino*, 132 Idaho 888, 892, 980 P.2d 552, 556 (1999) (citation omitted). "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Id.* at 161, 657 P.2d at 25 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). The question of whether improper suggestiveness exists is determined from a totality of the circumstances. *Neil v. Biggers*, 409 U.S. 188, 196 (1972). In considering whether an identification is reliable, this Court employs the *Manson-Biggers* balancing test, which looks at: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the identification; and (5) the length of time between the crime and the identification." *Trevino*, 132 Idaho at 893, 980 P.2d at 557.

In the present case, the identification procedures used by the police were clearly improperly suggestive. In her description of the attacker, LeBrane described her attacker as being "Very, very tall and thin. . . . His hair was very greasy. It was long, dark. He looked like a Hispanic, native-American man and he was very tall. He was thin. . . . [A]nd his face was very -- it looked like it had a really bad rash on it. It was really messed up. His face was really messed up." In addition, LeBrane testified that her attacker spoke in English, and she indicated that her attacker did not have facial hair.

The video lineup in which LeBrane identified Wurdemann consisted of six men. Wurdemann was placed in the center. He was noticeably the tallest participant. And he was one of only three participants who had long hair. Of the other two participants who had long hair, both were much shorter than Wurdemann; one did not speak English, and the other had significant facial hair. Thus, Wurdemann was the only participant in the lineup who could be

6

fairly described as being tall, thin, Hispanic or Native American, with long dark hair, no facial hair, and able to speak English. As described at the evidentiary hearing by Dr. Reisberg, an expert in witness identification, the video lineup was "among the worst video lineups" he had ever seen "[a]nd so if one looks at this lineup and simply says, who is there, who is [a] plausible choice, given the fact that he's been described over and over as tall and having long straight hair, your attention is immediately drawn to [Wurdemann]."

In short, Wurdemann was the only participant who met LeBrane's description of her attacker. Such a lineup is the epitome of an improperly suggestive lineup. *E.g.*, *Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) ("A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not."); *Israel v. Odom*, 521 F.2d 1370, 1374 (7th Cir. 1975) ("Lineups in which suspects are the only participants . . . matching important elements of the description provided by the victim . . . substantially increase[e] the dangers of misidentification.").

Having determined the lineup was improperly suggestive, we next turn to the five-part *Manson-Biggers* balancing test to analyze the reliability of the identification. *State v. Hoisington*, 104 Idaho 153, 162, 657 P.2d 17, 26 (1983) ("[W]e conclude that there is at least sufficient indicia of suggestiveness in the identification procedures to require review under the *Manson-Biggers* balancing test. Thus, we turn to a review of the facts of the present case in light of the *Manson-Biggers* test.").

1.  The opportunity to view.

The attack on LeBrane took place sometime after 11:30 p.m. It was dark. LeBrane needs glasses to correct her vision. At some point during the attack, her glasses came off. It is unclear whether her glasses came off before the man LeBrane identified as Wurdemann got in her car or later in the attack.[3] However, LeBrane testified that at some point after the man identified as Wurdemann entered her car, he was as close as three inches to her and the dome light of her car was on. Given the proximity of her attacker and the illumination from the dome light, regardless of when she lost her glasses, LeBrane had a relatively good opportunity to view her attacker.

2.  The degree of attention.

---

[3] Shortly after the attack occurred, LeBrane told officers: "Oh, after they were in the car, I couldn't see a thing, I'm blind." Later, however, LeBrane testified that she did not lose her glasses until later on in the attack: "Q: I was under the impression that your glasses were taken off at the first place they stopped you on the freeway. A: No That's not true. They were taken off when – when they came back the second time . . . ."

7

LeBrane testified that she had been smoking marijuana immediately prior to her attack. She also testified that she was "loaded" but that she had only smoked two joints and that she was not impaired. LeBrane stated that she memorized what her attacker looked like and that she "had ample opportunity to look each of them in the face." Given the amount of time involved in the attack, the severity of the injuries LeBrane sustained, and LeBrane's testimony that she focused on her attackers' faces and memorized them it is likely that despite being "loaded," her degree of attention was high, even if her faculties were affected by the marijuana use.

3. The accuracy of the description.

Shortly after the attack occurred LeBrane provided a description of her attacker to police and helped produce a composite sketch of her attacker. In her description, she described her attacker as being Native American or Hispanic, tall, thin, with long dark hair, and a pockmarked or rash covered face. The height and pockmarks were the most significant features to LeBrane. Wurdemann is Native American, tall, thin, and has long dark hair. However, in the video lineup, his face is clear of pockmarks or a rash and a photo taken of Wurdemann approximately three months after the attack shows him as only having one or two blemishes on his face. This is not to say, however, that Wurdemann did not have a rash or other marking on his face at the time of the attack that later cleared up. Thus, despite the current absence of a rash or pockmarks, it appears that Wurdemann fairly meets the description LeBrane gave of her attacker.

4. The level of certainty.

LeBrane testified at trial that she was certain that Wurdemann was her attacker and that she identified him without hesitation during the lineup. However, there were no records kept as to her reaction during the lineup or her comments regarding Wurdemann's identification at the time of the lineup. Additionally, LeBrane identified other men in at least three other photo lineups as being the attacker she later identified as Wurdemann. In all three of those lineups, LeBrane picked out a person and indicated with some level of certainty that the person she picked was her attacker. None of the people LeBrane picked out in the photo lineups were her attacker and none of them were Wurdemann. LeBrane's explanation as to why she picked the other men in the photo lineups was that she thought she had to pick someone out of the lineup. However, there is no indication that LeBrane felt any different about the lineup with Wurdemann. Indeed, she testified that she felt like she had to pick someone out of the video lineup, just like she had in the other lineups. Furthermore, Wayne Christie, an officer involved in

8

the investigation of the attack, stated in his affidavit that another man, Salvador Nez, more closely matched the composite drawing of LeBrane's attacker and was a known accomplice of Jeremey Sanchez, who was also convicted of the attack on LeBrane.

Thus, although LeBrane asserts she was certain in her identification of Wurdemann, her previous identifications of other men in previous photo lineups; her admission that, just like with the other lineups, she felt like she had to pick someone out of the video lineup; and Christie's statement that another known accomplice of Sanchez more closely matched the composite drawing, significantly undercut her assertion of certainty.

5. The length of time between the crime and the identification.

The attack on LeBrane took place in June 2000. LeBrane's identification of Wurdemann took place in March 2002. Thus, a period of almost two years had elapsed between the attack and LeBrane's identification of Wurdemann. Such a long lapse of time between the attack and the identification is a "seriously negative factor" in determining the reliability of the identification. *Hoisington*, 104 Idaho at 164, 657 P.2d at 28 ("There was, to be sure, a lapse of seven months between the rape and the confrontation. This would be a seriously negative factor in most cases." (quoting *Biggers*, 409 U.S. at 200)). The negative effect is further compounded because LeBrane made multiple incorrect identifications in the two-year interval, which was not the case in *Hoisington* or *Biggers*.

In summary, due to the fact that it was dark and LeBrane was under the influence of marijuana when the attack occurred, combined with the fact that it had been close to two years between the attack and her identification of Wurdemann and the fact that LeBrane had identified various other individuals as her attacker during that two-year interval, we cannot say that the reliability of the identification of Wurdemann is sufficient to overcome the blatant suggestiveness of the lineup. In doing so, we are careful to note that not one factor significantly outweighs another in our determination. Rather, it is the culmination of all these factors weighed against the suggestiveness of the lineup that determines our decision. *Hoisington*, 104 Idaho at 164–65, 657 P.2d at 28–29; *see also Manson*, 432 U.S at 114 ("Against these factors is to be weighed the corrupting effect of the suggestive identification itself.").

Accordingly, because we conclude that the reliability of the identification does not outweigh the suggestive nature of the lineup, we cannot say that had a motion been made to

9

suppress the lineup it would not have been granted. Indeed, the opposite is true, and had the motion been made it should have been granted.

ii. Whether the decision not to challenge the lineup with a motion to suppress fell within the acceptable range of discretion and trial strategy.

"When evaluating an ineffective assistance of counsel claim, this Court does not second-guess strategic and tactical decisions, and such decisions cannot serve as a basis for post-conviction relief unless the decision is shown to have resulted from inadequate preparation, ignorance of the relevant law or other shortcomings capable of objective review." *Payne*, 146 Idaho at 561, 199 P.3d at 136. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland v. Washington*, 466 U.S. 688, 689 (1984) (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Here, the district court found that there was no strategic or tactical decision regarding whether to challenge the identification of Wurdemann. This is a factual finding. *See Gabourie v. State*, 125 Idaho 254, 257, 869 P.2d 571, 574 (Ct. App. 1994) (noting that a district court's finding that trial counsel's action was not tactical was a factual determination). We will not disturb such a finding unless it is clearly erroneous. *Booth v State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011). After reviewing the record, we can find no indication that the decision not to file a motion to suppress was a tactical or strategic decision. However, recognizing the strong presumption that counsel acted "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, we review whether counsel's decision not to file a motion to suppress was reasonable given the prevailing legal standards at the time of the trial. *State v. Abdullah*, 158 Idaho 386, 481, 348 P.3d 1, 96 (2015), *cert. denied sub nom. Abdullah v. Idaho*, 136 S. Ct. 1161 (2016) (noting that the correct standards to evaluate ineffective assistance of counsel claims are "the prevailing professional norms at the time of trial").[4]

---

[4] Because the correct standard to review ineffective assistance of counsel claims is under the prevailing legal standards at the time of the trial, we do not consider our holdings in *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2011), and *State v. Pearce*, 146 Idaho 241, 192 P.3d 1065 (2008), which were decided after Wurdemann's case was decided in 2002. *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (holding that a lawyer is not ineffective for failing to anticipate a decision in a later case).

The motion in limine by the State to enter lineup information into evidence was heard on June 12, 2002. During the hearing, the only objection raised by pretrial defense counsel[5] was to relevance and that objection was only directed to the photograph lineups, not the video lineup. In fact, the video lineup was originally explicitly excluded from the motion but was then added back at the end of the hearing after the court ruled that photos were permissible and was not objected to at all by pretrial counsel. At trial, when the State moved to admit the video lineup, trial defense counsel made no objection. Indeed, according to the trial transcript, trial counsel stipulated to the admission of the video lineup into evidence.

At an evidentiary hearing in August 2011, trial counsel was asked about the video lineup and why he did not challenge it:

> Q: And the State had made some motions in limine in order to enter some of that lineup information; is that right?
> A: My recollection is they did, yes.
> Q: And they were successful?
> A: They were successful in getting the -- I think we opposed it, and they were successful.
> . . . .
> A: Unless we could eliminate her identification completely, which we knew we couldn't do, our case stemmed around the misidentification or poor identification.
> Q: Would there have been any purpose for you to file a motion in limine to exclude evidence of identifications of the petitioner that were derived from suggestive lineups?
> A: Well, the State made motions to get it in. I don't know -- and they won. I don't know a counter-motion that I'd have been any more successful with. And as I stated, I don't see any way that we could totally eliminate her identification.

Idaho Criminal Rule 12(b)(3) allows for motions to suppress evidence on the ground that it was illegally obtained or is otherwise constitutionally inadmissible. We clearly stated in *Hoisington*, that an impermissibly suggestive lineup directly affects a defendant's due process rights. 104 Idaho at 161–62, 657 P.2d at 25–26. Had trial counsel properly prepared and reviewed the record and transcripts, he would have known that pretrial counsel's objection to the State's motion in limine was only to the photographs and was only to relevance and not based on due process grounds relating to the suggestive nature of the lineup. Furthermore, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 763 (2000); *see also Burgess v. Salmon*

---

[5] Wurdemann had different counsel for his pretrial motions and at trial.

11

*River Canal Co.*, *Ltd.*, 127 Idaho 565, 568–69, 903 P.2d 730, 733–34 (1995) (noting a district court's reversal of a pretrial motion a month into trial). Thus, even if pretrial counsel had objected to the State's motion in limine on due process grounds, trial counsel, absent a strategic reason not to, should have renewed the objection at trial. Moreover, had trial counsel been aware of the relevant case law at the time, i.e., *Hoisington* and *Biggers*, he would have been aware that due to the blatant suggestive nature of the lineup, it was probable that had he objected or filed a motion to suppress, the identification would have been excluded from evidence. Accordingly, trial counsel's statement that he "didn't know a counter-motion" or how "we could totally eliminate her identification," indicate "inadequate preparation [and] ignorance of the relevant law." *Payne*, 146 Idaho at 561, 199 at 136.

While the district court did not explicitly find that counsel was inadequately prepared or ignorant of relevant law, the district court found: (1) that defense counsel was aware that the video lineup was overly suggestive; (2) that identification was "a major" or "primary issue" in the case; (3) that there was no strategic decision to challenge the lineup, but simply a failure to do so; and (4) that the case law at the time, i.e., *Hoisington* and *Biggers*, clearly reflected that due process was implicated in suggestive lineups. Such findings are adequate to support a finding of inadequate preparation and ignorance of the relevant law, even if the district court did not use those explicit words. *See, e.g.*, *Booth*, 151 Idaho at 617, 262 P.3d at 260 (holding that the Court will not disturb the trial court's factual findings if supported by substantial evidence); *see also cf. State v. Kirkwood*, 111 Idaho 623, 625, 726 P.2d 735, 737 (1986) (noting that in certain circumstances the trial court's findings, "*whether express or implied*, must be upheld if they are supported by substantial evidence" (quoting *People v. Lawler*, 507 P.2d 621, 623 (Cal. 1973))).

Therefore, because it is apparent that trial counsel did not properly review the record to determine if the lineup had been properly challenged and did not take the time to adequately research relevant case law on the implications of suggestive lineups, we affirm the district court's finding of ineffective assistance of counsel.

2. Whether Wurdemann was prejudiced by trial counsel's deficient performance.

The State only presents argument that the district court erred in finding that the attorney's performance was deficient. Therefore, we affirm the court's finding of prejudice. *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 17, 278 P.3d 415, 419 (2012) ("[I]f 'issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered.[ ] A party

12

waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking.' " (quoting *Gem State Ins. Co. v. Hutchison,* 145 Idaho 10, 16, 175 P.3d 172, 178 (2007))).

Wurdemann also alleges ineffective assistance of counsel by claiming that his attorney was ineffective in failing to call an expert to testify on the reliability of eyewitness identification. Given our conclusion that Wurdemann's counsel was ineffective in failing to challenge the lineup with a pre-trial motion, we do not address Wurdemann's second basis for alleging ineffective assistance of counsel.

## IV.    CONCLUSION

Because the reliability of the identification does not outweigh the suggestiveness of the video lineup in which Wurdemann was identified as LeBrane's attacker, and because the decision not to challenge the lineup was based on inadequate preparation and ignorance of the relevant law, we hold that trial counsel's failure to challenge the video lineup with a motion to suppress or an objection constituted ineffective assistance of counsel and violated Wurdemann's Sixth Amendment right to the same. The district court's grant of post-conviction relief is affirmed.

Justices, EISMANN, W. JONES, HORTON and BRODY, **CONCUR.**