**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49024**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  June 9, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DALE FRANCIS GILLETTE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Lynn G. Norton, District Judge.

Order denying motion to suppress evidence, <u>affirmed</u>; judgment of conviction for leaving the scene of an injury accident, <u>affirmed</u>; and, judgment of conviction for aggravated driving under the influence, <u>vacated</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Dale Francis Gillette appeals from his judgment of conviction for aggravated driving under the influence and leaving the scene of an injury accident, together with a persistent violator sentencing enhancement.  Gillette argues the district court erred by denying his motion to suppress evidence and allowing the State to admit the results of his blood draw.  We affirm the district court's denial of Gillette's motion to suppress and his conviction for leaving the scene of an injury accident, but vacate his conviction for aggravated driving under the influence (DUI).

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A truck struck a car causing injuries to the driver of the car.  The truck then drove off and the victim did not see who was driving.  A witness to the accident followed the truck involved as

1

it drove north for about a mile and parked behind a strip mall. After the truck stopped, the witness parked windshield-to-windshield with the truck. The witness was able to view the driver moving around the cab of the truck. The witness returned to the scene of the accident to speak with law enforcement.

Gillette was later detained as a suspect. An officer told the witness that they had someone detained who may or may not be the driver of the truck, but asked if the witness would assist them with a field identification. The witness described the driver of the truck as a light-skinned male, possibly with a buzz cut, wearing a white t-shirt. The officer escorted the witness to the area where Gillette was being detained. Gillette was sitting on the bumper of a patrol car when the witness confirmed that Gillette was the person he had seen driving the truck involved in the accident. Officers located a detached license plate from the accident scene matching the truck which was co-registered to Gillette. Thereafter, an officer performed field sobriety tests on Gillette and the officer obtained a warrant to draw Gillette's blood. Gillette was charged with aggravated driving under the influence (DUI), Idaho Code § 18-8006; and leaving the scene of an injury accident, I.C. § 18-8007, and a persistent violator sentencing enhancement, I.C. § 19-2514.

Gillette filed a motion to suppress the witness's identification. The district court held the field identification was overly suggestive but, applying *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013), found that the identification was nonetheless reliable under the totality of the circumstances and denied Gillette's motion to suppress.

At trial, the phlebotomist who drew Gillette's blood pursuant to the warrant testified that she was employed through Idaho 24/7 Home Health Care. When asked about her training, the phlebotomist testified that she was self-taught and that she had a lot of training, but she did not provide details of her training. Gillette objected to the phlebotomist's testimony, noting that I.C. § 18-8003 requires the person drawing blood for purposes of determining alcohol content to be trained in a licensed hospital or educational institution. The district court denied Gillette's objection and allowed the State to admit the results of the blood test. The jury found Gillette guilty of both aggravated DUI and leaving the scene of an injury accident, and Gillette admitted to the persistent violator enhancement.

Gillette timely appeals asserting that the district court erred by: (1) denying his motion to suppress the witness's identification of Gillette as the driver of the truck; and (2) allowing the State to admit the results of the blood draw in violation of I.C. § 18-8003.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999).

## III.

## ANALYSIS

Gillette asserts that the district court erred when it denied his motion to suppress the witness's identification of Gillette as the driver of the truck, despite finding that the identification stemmed from an overly suggestive field identification. The State argues that under the totality of the circumstances, the field identification was reliable and, therefore, admissible despite any suggestiveness in the field identification procedures. Gillette also argues that the district court abused its discretion by allowing the State to introduce the results of a blood draw obtained by a self-taught phlebotomist because the phlebotomist did not have the training required by I.C. § 18-8003(1). The State concedes that the foundational requirement of I.C. § 18-8003(1) was not met, but asserts the admission of the test results is harmless error.

### A. Witness Identification

Gillette asserts the district court erred when it denied his motion to suppress the witness's identification of Gillette as the driver of the truck despite finding that the identification stemmed from an overly suggestive field identification. "Due process requires the exclusion of identification evidence if police suggestiveness created a substantial risk of mistaken identification, except where the reliability of the identification is sufficient to outweigh the corrupting effect of the suggestive identification." *Wurdemann v. State*, 161 Idaho 713, 718, 390

P.3d 439, 444 (2017) (quoting *State v. Trevino*, 132 Idaho 888, 892, 980 P.2d 552, 556 (1999)). Where police action has created a risk of misidentification, Idaho's appellate courts apply a two-step test to determine whether evidence of an out-of-court identification violates due process: (1) "the defendant must establish that the identification procedure was overly suggestive"; and (2) "if the defendant meets that burden, courts consider whether the identification was nonetheless reliable under the totality of the circumstances." *Almaraz*, 154 Idaho at 593, 301 P.3d at 251. In the second step, the court considers the witness's opportunity to view the perpetrator, degree of attention, accuracy of description, level of certainty, and the time between the crime and pretrial confrontation. *Id.* The court then weighs those factors against the corrupting effect of the suggestive identification. *Id.* Greater indicia of reliability may be necessary when the suggestive procedures are more egregious. *Id.*

As an initial matter, the State does not challenge the district court's finding that the field identification was overly suggestive, however, the State asserts that the suggestiveness determination was a close call. The State argues the district court correctly found that the identification was nonetheless reliable based upon a totality of the circumstances. We agree that the suggestiveness of the field identification procedures was relatively low. In deciding whether an identification procedure was "overly suggestive," *Almaraz* set forth several "system variables" that help reduce the risk of misidentification: (1) conducting the identification procedure double-blind to ensure that lineup administrators who know the suspect's identity do not inadvertently suggest the information to the witness; (2) administering proper pre-lineup instructions that inform the witness that a suspect may or may not be in the lineup and it is permissible not to identify anyone; (3) avoiding confirmatory or post-identification feedback which can engender a false sense of confidence in the witness's identification; (4) making a full record of the witness's statement of confidence once an identification is made; and (5) shielding witnesses from viewing suspects more than once. *Id.* at 593-94, 301 P.3d at 251-52.

In this case, considering that time was of the essence, the officers took appropriate steps to limit potential for suggestiveness: the officer read the witness the admonishment card which explained that the suspect they would show was not necessarily guilty of any offense, and the witness indicated he understood; the officers offered no confirmatory or post-identification feedback about the identification including during logistical conversations setting up the identification procedure; and the officers did not display Gillette's photo prior to the in-person

4

identification. Thus, although the district court found the field identification was overly suggestive, the suggestiveness of the identification was relatively minimal. The identification procedure in this case was substantially less suggestive than that utilized in *Almaraz*. There, the officer "repeatedly interrupted the witness, asked leading questions which implied the answer he was looking for, and discussed with [the witness] outside information about the case, the suspect, and the victim during the interview," turned off the tape recorder right before he asked the witness to identify the suspect, failed to provide any admonishing instruction, and indicated to the witness that Almaraz was in the photograph. *Id.* at 595-96, 301 P.3d at 253-54.

Despite the suggestiveness, the identification was nonetheless reliable under the circumstances. *Almaraz* recognized several "estimator variables" which diminish the reliability of a witness's identification, including: (1) stress; (2) the use of a visible weapon during the crime; (3) a criminal event of shorter duration; (4) a greater distance between the witness and the suspect and poor lighting conditions; (5) the witness's level of intoxication; (6) the use of disguises during the crime and changes in facial features between the time of the initial observation and a subsequent identification; (7) a greater period of time between observation and identification to law enforcement; (8) race-bias; and (9) feedback from co-witnesses confirming the identification of a perpetrator. *Id.* at 594, 301 P.3d at 252.

Gillette does not dispute any of the district court's factual findings but asserts that this Court should hold that the district court erred in concluding that the identification was nonetheless reliable. Gillette argues the factors that weigh against reliability are: the witness's opportunity to view the driver of the vehicle was limited because he parked his truck windshield-to-windshield with the truck involved in the accident and was roughly thirty feet away; the windshield undoubtedly skewed the view the witness had of the driver and at best he had an obstructed view of the driver's face; the driver leaned over into the passenger side of the vehicle during the period in which the witness observed him; the witness was on the phone the entire time, thus his attention was split between whomever he was talking to on the phone and trying to get a look at the driver; the witness was only able to describe the driver as a white male with a buzz cut wearing a white t-shirt, which can apply to countless men in the area at any given time, thus it is of little value; and, at the time of the witness's identification, Gillette was wearing a grey hooded sweatshirt and blue t-shirt rather than a white t-shirt as the witness previously described. Thus, Gillette asserts that the identification was not reliable.

We disagree. Here, the witness had a good opportunity to view the driver because, while he did not see the driver's face at the accident scene, he could identify that the driver was a male and he pursued the truck to the strip mall where he got a good look at the driver from fifteen to thirty feet away for two minutes while his view was unobstructed and during daylight hours. While the witness was on the phone during this time, there was not a weapon present, the witness was not intoxicated, and there were no other circumstances that may have divided the witness's attention from his opportunity to view Gillette. The witness provided an accurate description of a light-skinned male with short black or buzzed hair. The discrepancy between what Gillette was wearing during the observation and by the time of detention and identification did not overcome the otherwise accurate information provided. The witness confidently stated that he would be able to identify the person he saw driving the truck. After identifying Gillette, the witness responded unequivocally that he was sure Gillette was the driver of the truck that hit the victim and fled the accident scene. The time between the accident and the field identification was also relatively short. The out-of-court identification did not create a substantial likelihood of misidentification. In light of the circumstances, the district court did not err in concluding that the witness's identification of Gillette was reliable and admissible. As a result, we affirm the district court's order denying Gillette's motion to suppress and Gillette's conviction for leaving the scene of an injury accident.

**B.      Phlebotomist**

Gillette asserts that the district court abused its discretion by allowing the State to introduce the results of the blood draw because the phlebotomist did not establish that she was trained to properly draw blood through a licensed hospital or educational institution pursuant to I.C. § 18-8003(1), which requires:

> (1) Only a licensed physician, qualified medical technologist, registered nurse, **phlebotomist trained in a licensed hospital or educational institution** or other medical personnel trained in a licensed hospital or educational institution to withdraw blood can, at the order or request of a peace officer, withdraw blood for the purpose of determining the content of alcohol, drugs or other intoxicating substances therein. This limitation shall not apply to the taking of a urine, saliva or breath specimen. For purposes of this section: (a) the term "qualified medical technologist" shall be deemed to mean a person who meets the standards of a "clinical laboratory technologist" as set forth by the then current rules and regulations of the social security administration of the United States department of health and human services pursuant to subpart M of part 405, chapter III, title 20, of the code of federal regulation; and **(b) the terms "phlebotomist" and "other medical personnel" shall be deemed to mean persons who meet the standards**

6

**for the withdrawing of blood as designated and qualified by the employing medical facility or other employing entity of those persons**.

The district court found that while the phlebotomist was self-taught, she was employed as a phlebotomist by a health care institution which qualified her under the second bolded clause, I.C. § 18-8003(1)(b). The district court determined that the two bolded clauses in the statute, excerpted above, provided alternative means for phlebotomist qualification. Gillette argues that the two bolded clauses are not mutually exclusive. The first clause requires that a person drawing blood be trained in a licensed hospital or educational institution while the last clause can be read as allowing the employing medical facility to establish additional standards for employed phlebotomists.

In *State v. Clapp*, 170 Idaho 314, 510 P.3d 667 (2022), the Idaho Supreme Court held that, in a DUI case, the State is required to establish the phlebotomist who drew the suspect's blood was qualified pursuant to both clauses of I.C. § 18-8003(1) prior to the blood test results being admitted at trial. *Id.* at 319, 510 P.3d at 672. The State acknowledges that, considering *Clapp*, I.C. § 18-8003 contains a foundational requirement that the State failed to satisfy in this case and, thus, evidence of the results of the blood draw was erroneously admitted at trial because the phlebotomist did not testify that she was trained in a hospital or an educational institution.

However, the State argues that harmless error applies here. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context

7

of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

The State acknowledges that in DUI cases where, as here, the jury was instructed on two alternative charging theories (impairment theory and per se/BAC theory), Idaho appellate courts have declined to find the erroneous admission of blood alcohol content to be harmless where it cannot be determined which theory the jury utilized to find guilt. *See State v. Austin*, 163 Idaho 378, 382, 413 P.3d 778, 782 (2018); *State v. Winson*, 129 Idaho 298, 302, 923 P.2d 1005, 1009 (Ct. App. 1996). The State asserts that *Hedgpeth v. Pulido*, 555 U.S. 57, 60-61 (2008) (per curium) supports the State's assertion that an alternative-theory error does not constitute structural error and is subject to harmless-error analysis so long as the error does not categorically vacate all of the findings of the jury, and an instructional error arising in the context of multiple theories of guilt does not vacate the jury's findings more than an omission or misstatement of an element of the offense when only one theory is submitted. *See id.* The State essentially argues that harmless error applies in the alternate-theory context when "the error affecting one theory of guilt (alcohol content) is rendered harmless by a postulated finding that might have been made on an alternative theory (impaired driving)." The flaw in the State's analysis is it bypasses the jury altogether. It asks the appellate court to determine for itself whether there was sufficient evidence to prove the alternative theory (impaired driving) without regard to the jury verdict. In the application of harmless error, it must be said that the "error did not contribute to the verdict rendered." *Garcia*, 166 Idaho at 674, 462 P.3d at 1138. The Idaho Supreme Court held in *Austin*, 163 Idaho at 382, 413 P.3d at 782, that where there is no indication of which theory of DUI the jury convicted the defendant, the State's claim of alternative-theories necessarily fails. There is nothing in the record demonstrating which theory the jury used to convict Gillette. The State has not proven beyond a reasonable doubt that the district court's error in allowing the jury to hear Gillette's BAC did not contribute to the guilty verdict. The error in introducing the blood draw results is not harmless. We vacate Gillette's conviction for aggravated DUI.

## IV.

## CONCLUSION

The district court did not err in denying Gillette's motion to suppress the witness's identification. The district court erred in allowing the State to admit the results of the blood draw. Thus, we affirm the district court's order denying Gillette's motion to suppress the witness's

identification of him, affirm his conviction for leaving the scene of an injury accident, and vacate his conviction for aggravated DUI.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.