# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50403

JOHN DAVID WURDEMANN, )
)
    Petitioner-Appellant, )    Boise, May 2024 Term
)
v. )    Opinion filed: August 22, 2024
)
STATE OF IDAHO, )    Melanie Gagnepain, Clerk
)
    Respondent. )

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Andrea L. Courtney, District Judge.

The judgment of the district court is <u>affirmed</u>.

Cooper & Elliott, LLC, Columbus, Ohio, pro hac vice, and Strother Law Office, Eagle, Idaho, for Appellant. Barton R. Keyes argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Alan Hurst argued.

---

MOELLER, Justice.

This case raises a question of first impression concerning the recently enacted Idaho Wrongful Conviction Act ("the Act"). John David Wurdemann was charged and later convicted of seven felonies, all related to an attack against a woman in 2000. Sixteen years later, a district court granted Wurdemann's petition for post-conviction relief and vacated his convictions after concluding that Wurdemann had been denied the right to effective assistance of counsel during his trial. This Court later affirmed the district court's decision. *See Wurdemann v. State*, 161 Idaho 713, 390 P.3d 439 (2017). Wurdemann has not been retried.

In 2021, Idaho Governor Brad Little signed S.B. No. 1027, the "Idaho Wrongful Conviction Act." 2021 Idaho Sess. Laws 38 (S.B. 1027) (codified as I.C. §§ 6-3501-3505). The Act provides a right to compensation for wrongfully convicted claimants who meet certain statutory criteria. Thereafter, Wurdemann filed a petition seeking monetary compensation and a certificate of innocence, as provided in the Act. The State opposed the petition and moved for

1

summary judgment, which the district court granted. The district court, citing the language of the statute, concluded that Wurdemann had not established that "the basis for reversing or vacating the conviction was not legal error unrelated to his factual innocence." I.C. § 6-3502(2)(g). Wurdemann timely appealed.

This case asks us to, first, interpret the meaning of the double negative phrase "not legal error unrelated to his factual innocence" used in the Idaho Wrongful Conviction Act and, second, determine whether the district court erred in granting summary judgment to the State. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John David Wurdemann was charged for his alleged participation in the June 2000 attack on a woman in Canyon County. This Court, quoting an earlier Idaho Court of Appeals decision, noted the factual details of the attack:

> The crimes that gave rise to this prosecution occurred in the early morning hours of June 15, 2000, when four people in another vehicle forced [a woman] to stop her car on Interstate 84 in Canyon County, demanded money and drugs from her, commandeered her vehicle, and drove her to a dark field along a country road. There, the foursome took [the woman's] money, credit cards, and belongings, stabbed her repeatedly, slit her throat, hit her in the head with a baseball bat, slashed her shoulder, set her car on fire, and left her to die.

*Wurdemann v. State*, 161 Idaho 713, 716 n.2, 390 P.3d 439, 442 n.2 (2017) [hereinafter *Wurdemann 2017*] (quoting *State v. Wurdemann*, No. 30438 (Idaho Ct. App. Feb. 28, 2006) (unpublished)).

After Wurdemann was convicted of seven felonies in connection with the attack, he appealed his convictions. *Id.* Wurdemann's 2006 direct appeal, which was heard by the Idaho Court of Appeals, was denied, as well as his 2011 petition for post-conviction relief, which was denied by the district court. *Wurdemann 2017*, 161 Idaho at 715–16, 390 P.3d at 441–42. Thereafter, Wurdemann appealed the denial of his petition for post-conviction relief. "In July 2012, while his post-conviction appeal was pending, Wurdemann filed an Idaho Rule of Civil Procedure 60(b) Motion, Relief from a Judgment or Order." *Id.* at 716, 390 P.3d at 442. The Rule 60(b) motion challenged the judgment entered in his 2011 petition for post-conviction relief case. The district court granted Wurdemann's Rule 60(b) motion and held an evidentiary hearing to determine whether Wurdemann was denied effective assistance of counsel. "Following the

evidentiary hearing, the district court ruled that Wurdemann was denied his right to the effective assistance of counsel and vacated his convictions." *Id.* The State appealed.

Wurdemann's ineffective assistance of counsel claim was based on an allegation that his trial attorneys failed to challenge a police lineup because of inadequate preparation and ignorance of the law. Key to Wurdemann's arrest and later convictions was an identification made by a witness during the police lineup. As this Court noted in *Wurdemann* 2017, the district court granted Wurdemann's 2011 post-conviction petition, because it concluded that the lineup resulting in his arrest was based on "identification procedures used by the police" that "were [] improperly suggestive." *Wurdemann 2017*, 161 Idaho at 718, 390 P.3d at 444. In our opinion affirming the district court's decision, we described the manner in which the lineup was conducted:

> In her description of the attacker, [the victim] described her attacker as being "Very, very tall and thin.... His hair was very greasy. It was long, dark. He looked like a Hispanic, native-American man and he was very tall. He was thin.... [A]nd his face was very—it looked like it had a really bad rash on it. It was really messed up. His face was really messed up." In addition, [the victim] testified that her attacker spoke in English, and she indicated that her attacker did not have facial hair.
>
> The video lineup in which [the victim] identified Wurdemann consisted of six men. Wurdemann was placed in the center. He was noticeably the tallest participant. And he was one of only three participants who had long hair. Of the other two participants who had long hair, both were much shorter than Wurdemann; one did not speak English, and the other had significant facial hair. Thus, Wurdemann was the only participant in the lineup who could be fairly described as being tall, thin, Hispanic or Native American, with long dark hair, no facial hair, and able to speak English. As described at the evidentiary hearing by Dr. Reisberg, an expert in witness identification, the video lineup was "among the worst video lineups" he had ever seen "[a]nd so if one looks at this lineup and simply says, who is there, who is [a] plausible choice, given the fact that he's been described over and over as tall and having long straight hair, your attention is immediately drawn to [Wurdemann]."
>
> In short, Wurdemann was the only participant who met [the victim's] description of her attacker. Such a lineup is the epitome of an improperly suggestive lineup.

*Wurdemann 2017*, 161 Idaho at 718–19, 390 P.3d at 444–45 (citation omitted) (first, third, and seventh alterations added). Accordingly, this Court affirmed the grant of post-conviction relief "[b]ecause the reliability of the identification [did] not outweigh the suggestiveness of the video lineup in which Wurdemann was identified as [the victim's] attacker, and because the decision not to challenge the lineup was based on inadequate preparation and ignorance of the relevant law

3

. . . ." *Id.* at 723, 390 P.3d at 449. Since the issuance of our decision in 2017, the State has not retried Wurdemann.

In 2021, the Idaho Wrongful Conviction Act was adopted and became law. *See* Idaho Wrongful Conviction Act, 2021 Idaho Sess. Laws 38 (S.B. 1027) (codified as I.C. §§ 6-3501-3505). The Act provides a statutory right to compensation for claimants who have been "convicted and subsequently imprisoned for one (1) or more crimes that such person did not commit." I.C. § 6-3502(1). In order to prevail on a claim under the Act, a claimant must establish each of the following elements by a preponderance of the evidence:

(a) The claimant was convicted of a felony in this state and subsequently imprisoned;

(b) The claimant did not commit the crime for which he was convicted;

(c) The claimant did not commit the acts that were the basis of the conviction;

(d) The claimant did not aid, abet, or act as an accomplice or accessory to either the acts or to a person who committed the acts that were the basis for the conviction;

(e) The claimant did not commit an included offense of the crime for which he was imprisoned;

(f) The claimant establishes that his conviction was reversed or vacated and either:

    (i) The claimant was not retried and the charges were dismissed; or

    (ii) The claimant was retried and was found not guilty; and

(g) The claimant establishes that *the basis for reversing or vacating the conviction was <u>not legal error unrelated</u> to his factual innocence*.

I.C. § 6-3502(2) (emphasis added). Additionally, the Act provides that "if the [S]tate shows by a preponderance of the evidence that a claimant pled guilty with the specific intent to protect another party from prosecution for the underlying conviction that forms the basis for the claim[,]" then the claimant shall not prevail. I.C. § 6-3502(3).

Shortly after the Act took effect, Wurdemann filed a petition in Canyon County district court seeking monetary compensation and a certificate of innocence, as provided in the Act. The State opposed the petition and, in its answer, demanded a jury trial. The State later moved for summary judgment, arguing that Wurdemann could not establish two of the statutory requirements. The district court agreed, addressing only Idaho Code section 6-3502(2)(g), and concluded that there was not a genuine dispute of material fact and that, as a matter of law, Wurdemann had not established "the basis for reversing or vacating the conviction was not legal error unrelated to his factual innocence." I.C. § 6-3502(2)(g). Having concluded that Wurdemann

4

failed to establish a requisite element of his claim, the district court granted the State's motion for summary judgment. Wurdemann timely appealed to this Court.

## II. STANDARDS OF REVIEW

This Court reviews a grant of summary judgment de novo and employs the same standard of review used by the trial court in ruling on the motion for summary judgment. *Hanks v. City of Boise*, 173 Idaho 128, 540 P.3d 299, 302 (2023), *reh'g denied* (Jan. 4, 2024) (citing *United Heritage Prop. & Cas. Co. v. Zech*, 170 Idaho 764, 770, 516 P.3d 1035, 1041 (2022)). Accordingly, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 228, 494 P.3d 769, 776 (2021) (quoting I.R.C.P. 56(a)). When this Court reviews a discretionary decision of the district court, this Court considers four elements: "Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Issues of statutory interpretation are questions of law which are reviewed by this Court de novo. *Smith v. Kount, Inc.*, 169 Idaho 460, 463, 497 P.3d 534, 537 (2021) (first citing *Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015); and then citing *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011)). "When faced with a mixed question of fact and law, the Court will defer to the district court's factual findings if supported by substantial evidence, but will exercise free review over the application of the relevant law to those facts." *Savage v. State*, 170 Idaho 367, 371, 511 P.3d 249, 253 (2022) (citing *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011)).

## III. ANALYSIS

This case presents a seemingly straightforward question on appeal: What must a claimant establish under Idaho Code section 6-3502(2)(g) to successfully bring a statutory claim for wrongful conviction? However, answering that question is challenging based on the unfortunate use of a double negative in the Idaho Wrongful Conviction Act, which requires that the claimant must establish, among other requirements, "that the basis for reversing or vacating the conviction was *not legal error unrelated to his factual innocence*." I.C. § 6-3502(2)(g) (emphasis added).

"The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute." *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021) (quoting *In Re Doe*, 168 Idaho 511, 516, 484 P.3d 195, 200 (2021)). "If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning." *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009). When necessary to interpret a phrase, "we must look to the grammatical construction of the statute as the legislature intended the statute to be construed according to generally accepted principles of English grammar." *State v. Collinsworth*, 96 Idaho 910, 914, 539 P.2d 263, 267 (1975).

For obvious reasons, it is inadvisable to use a double negative in crafting a legal standard in a statute, for it may suggest the opposite of what was intended. As used in the context of the Act, such a double negative is known grammatically as a "litotes," which is a linguistic device where the contrary is denied. It is often used ironically to express understatement. *See Litotes*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/litotes (last visited August 16, 2024) (A litotes is an "understatement in which an affirmative is expressed by the negative of the contrary (as in 'not a bad singer' or 'not unhappy')."). For example, during oral argument a judge might describe an attorney's argument as "not unpersuasive." While this might mean that the judge thought the argument had some persuasive value, it is not necessarily an indication that the judge was persuaded by the argument.

In his noted work, *Garner's Modern American Usage*, Bryan Garner has cautioned: "Double negatives such as *not untimely* are often needlessly used in place of more straightforward wordings such as *timely* . . . . This type of litotes (the negation of an opposite) often makes language convoluted." Bryan A. Garner, *Garner's Modern American Usage* 563 (3d ed. 2009) (emphasis in original).[1] While the use of litotes in literature[2], speeches[3], or even as an expression of common

---

[1] George Orwell wryly observed that "[o]ne can cure oneself of the not un-formation by memorizing this sentence: A not unblack dog was chasing a not unsmall rabbit across a not ungreen field." William Safire, *Our Language; Redundadundadundant*, NEW YORK TIMES MAGAZINE (July 6, 1986) (quoting George Orwell, *Politics and the English Language*, in IN FRONT OF YOUR NOSE 127, 138 (1st ed., 1968).

[2] *See, e.g.,* WILLIAM SHAKESPEARE, HAMLET, act 1, sc. 2 (King Claudius describing young Prince Fortinbras as one who "hath not failed to pester us with message"); JANE AUSTEN, PRIDE AND PREJUDICE 27 (Penguin Classics 2014) (1813) (describing the enigmatic Mr. Darcy as "not unwilling to receive" Elizabeth's hand, had she not drawn it back); HARPER LEE, TO KILL A MOCKINGBIRD 19 (HarperCollins 1999) (1960) (Scout recounting that she "could not remember not being able to read hymns.").

[3] George Washington, Farewell Address, Sept. 19, 1796 (humbly noting that he was "[n]ot unconscious in the outset of the inferiority of my qualifications, …").

courtesy (as in "I hear you're not a bad golfer, Judge") is well-taken, the employment of this linguistic device in the Act has complicated our efforts to interpret the statute. Here, applying a plain language interpretation and ordinary grammar principles to the wording of the Act, and assuming no ironic understatement was intended, we hold that the legislature's use of the phrase "not legal error unrelated to his factual innocence" plainly means "legal error related to his factual innocence."

The interpretation of the statutory clause at issue is further complicated by combining the litotic double-negative with the term "legal error," a phrase without a universally applicable definition. The Act contains some definitions, "legal error" is not among the terms it defines. While the term might appear to be a well-known term of art, it can mean different things in different contexts. In fact, the exact phrase "legal error" is not defined in *Black's Law Dictionary*.

"Legal error" typically takes on two different forms. It can be broadly understood as akin to a mistake of law, typically made by trial counsel, which is defined as a "mistake about the legal effect of a known fact or situation." *Mistake*, BLACK'S LAW DICTIONARY (11th ed. 2019). It can also be more narrowly used to denote a mistake of law committed by a court or tribunal. *See Error*, BLACK'S LAW DICTIONARY (11th ed. 2019). This Court has employed the term in both ways in different contexts. *Compare Shubert v. Ada Cnty.*, 166 Idaho 458, 472, 461 P.3d 740, 754 (2020) ("Represented criminal defendants are not, however, presumed to have recognized legal errors in their court documents."), *and Thornton v. Pandrea*, 161 Idaho 301, 317, 385 P.3d 856, 872 (2016) ("Mr. Thornton has offered no reasoning or argument supporting his contention that the sanctions were based on counsel's legal error."), *with State v. Doe (2021-38)*, 172 Idaho 292, 532 P.3d 396, 400 (2023) ("However, when a defendant assigns legal error to a trial court's conclusions of law . . . the issue may be considered on appeal even though the defendant did not raise it below."), *and Mercy Med. Ctr. v. Ada Cnty., Bd. of Cnty. Comm'rs of Ada Cnty.*, 146 Idaho 226, 229–30, 192 P.3d 1050, 1053–54 (2008) ("This is because the Board conceded that its conclusion that an undocumented alien may never be a resident for purposes of this state's indigency statutes was legal error.").

Importantly, the parties agree on which definition of legal error applies to the Act. Wurdemann concedes that the ineffective assistance of counsel claim alleged here is the type of legal error referenced in this statute. Thus, the parties are in accord that ineffective assistance of counsel is within the plain meaning of "legal error," as used in the Act. We agree and conclude

7

that ineffective assistance of counsel fits within the plain meaning of "legal error" for the purposes of Idaho Code section 6-3502(g). However, the parties dispute whether the legal error that forms the basis for reversing the convictions in this case—the failure of Wurdemann's trial attorneys to challenge inculpatory evidence due to its being improperly suggestive—amounts to a finding of factual innocence. We conclude that it does not.

In interpreting the statutory provision at issue in this appeal, the district court narrowly construed the statute and concluded that Idaho Code section 6-3502(2)(g) "contemplates [that] a qualifying conviction needs to be overturned based on new evidence or new science, showing innocence." We disagree that the basis of the conviction must be confined to "new evidence or new science." Nothing in Idaho Code section 6-3502(2)(g) suggests such. However, we generally agree with the district court to the extent that it held that the basis of the reversal must be predicated on a "showing [of] innocence."

Idaho Code section 6-3502(2)(g) contemplates redressing a "wrongful" conviction that is reversed based on *factual innocence*, not on an evidentiary ruling that upends a guilty verdict. While the *exclusion* of erroneously admitted inculpatory evidence (such as the constitutionally flawed lineup identification) meant that the jury's guilty verdict could not be sustained as a matter of law, it does not establish factual innocence. It is the *existence* of exculpatory evidence, such as newly discovered DNA evidence or improperly excluded alibi evidence, that establishes factual innocence. Thus, we conclude that to satisfy the requirements of Idaho Code section 6-3502(2)(g), a claimant must establish that the basis for reversal was a showing of factual innocence.

Here, Wurdemann was convicted of seven felony counts related to a vicious attack on a woman in 2000. *Wurdemann 2017*, 161 Idaho at 715, 390 P.3d at 441. This Court affirmed the district court's grant of post-conviction relief "[b]ecause the reliability of the identification [did] not outweigh the suggestiveness of the video lineup in which Wurdemann was identified as [the victim's] attacker, and because the decision not to challenge the lineup was based on inadequate preparation and ignorance of the relevant law. . . ." *Id*. at 723, 390 P.3d at 449. Ultimately, the district court concluded that Wurdemann was entitled to a new trial because he was denied the right to effective assistance of counsel due to his trial attorney's failure to challenge the lineup evidence admitted at his trial. We affirmed the district court, agreeing that had the lineup evidence been properly challenged by his attorneys at trial, it should have been excluded. "When a claimant alleges ineffective assistance of counsel based on counsel's failure to file a motion, a 'critical

8

inquiry is whether the motion, if filed, should have been granted. . . .' " *Id*. at 717, 390 P.3d at 443 (quoting *State v. Dunlap*, 155 Idaho 345, 385, 313 P.3d 1, 41 (2013)).

While the improper admission of the lineup evidence resulted in a reversal of his convictions, this does not establish Wurdemann's factual innocence. To put it simply, Wurdemann's convictions were ultimately overturned based on the deficient performance of his trial attorneys and the resultant prejudice to his right to a fair trial—not because evidence showed Wurdemann was actually innocent. *Id*. at 723, 390 P.3d at 449. Therefore, we conclude that the basis for the reversal was legal error unrelated to factual innocence. Because Wurdemann cannot satisfy this element of his claim, the district court did not err in granting summary judgment to the State.

## IV. CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

Chief Justice BEVAN, Justices BRODY, MEYER, and Justice Pro Tem EMORY CONCUR.